No. 23-1876C
(Judge Richard Hertling)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

112 GENESEE STREET, LLC, *et al*.,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

DEFENDANT'S MOTION TO DISMISS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

REBECCA S. KRUSER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 305-2035
Rebecca.s.kruser@usdoj.gov

February 26, 2024                Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

DEFENDANT'S MOTION TO DISMISS ................................................................... 1

INTRODUCTION ......................................................................................................... 1

STATEMENT OF THE ISSUE .................................................................................... 4

STATEMENT OF THE FACTS .................................................................................. 4

SUMMRAY OF THE ARGUMENT ........................................................................... 6

ARGUMENT ................................................................................................................. 6

    I.      Standard Of Review ..................................................................................... 6

    II.     The Court Should Dismiss The Case Because Plaintiffs Lack
            Standing ........................................................................................................ 7

    III.    The Court Should Dismiss The Case Because Plaintiffs' Claims Are Moot.......... 9

    IV.    The Court Does Not Possess Subject-Matter Jurisdiction Because Section 5003
            Of ARPA Is Not Money-Mandating..................................................................... 12

    V.     The Court Does Not Possess Subject-Matter Jurisdiction Over Claims That A
            Government Agency Acted Arbitrarily And Capriciously ................................... 15

    VI.    The Court Does Not Possess Subject-Matter Jurisdiction Over Negligence
            Claims ......................................................................................................... 21

    VII.   Transfer To A District Court Would Be Futile ................................................... 21

CONCLUSION................................................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Alder Terrace, Inc. v. United States*,
    161 F.3d 1372 (Fed. Cir. 1998)................................................................................ 7

*Allgenesis Biotherapeutics Inc. v. Cloudbreak Therapeutics, LLC*,
    85 F.4th 1377 (Fed. Cir. 2023) .............................................................................. 8

*Anderson v. United States*,
    344 F.3d 1343 (Fed. Cir. 2003)................................................................................ 7

*Banerjee v. United States*,
    77 Fed. Cl. 522 (2007) ............................................................................................ 16

*Blessed Cajuns LLC v. Guzman*,
    No. 4:21-677 (N.D. Tex. May 28, 2021) ................................................................ 2

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988)......................................................................................... 17, 19

*Braun v. United States*,
    144 Fed. Cl. 560 (2019) .......................................................................................... 16

*Cottrell v. United States*,
    42 Fed. Cl. 144 (1998) ............................................................................................ 21

*Crocker v. United State*s,
    125 F.3d 1475 (Fed. Cir. 1997)............................................................................... 16

*Dancy v. United States*,
    229 Ct. Cl. 300 (1982) ............................................................................................ 22

*DeFunis v. Odegaard*,
    416 U.S. 312 (1974)................................................................................................. 10

*Dow Jones & Co., Inc. v. Ablaise Ltd.*,
    606 F.3d 1338 (Fed. Cir. 2010)................................................................................. 6

*Eastport S. S. Corp. v. United States*,
    372 F.2d 1002 (Ct. Cl. 1967) .................................................................................. 12

*Fisher v. United States*,
    402 F.3d 1167 (Fed. Cir. 2005)..................................................................... 7, 12, 17

*Gilham v. United States*,
   164 Fed. Cl. 1 (2023), *aff'd*, No. 2023-1507, 2023 WL 5814413 (Fed. Cir. Sept. 8, 2023)..... 16

*Greer's Ranch Café v. Guzman*,
   540 F. Supp. 3d 638 (N.D. Tex. 2021) ................................................................................. 2

*Harlem Globetrotters Int'l, Inc. v. United States*,
   168 Fed. Cl. 31 (2023) ....................................................................................................... 16

*Infidels, LLC v. Guzman*,
   No. 3:22-391, 2023 WL 5599605 (M.D. Tenn. Aug. 29, 2023).......................................... 9, 22

*Katz v. Cisneros*,
   16 F.3d 1204 (Fed. Cir. 1994)...................................................................................... 17, 18

*Keener v. United States*,
   No. 2:22-1640, 2023 WL 2478367 (D.S.C. Mar. 13, 2023)....................................... 9, 11, 22

*Kingsley Restaurants, Inc. v. United States Small Bus. Admin.*,
   No. 1:21-CV-2314-SCJ, 2021 WL 8441778 (N.D. Ga. Aug. 24, 2021) ...................... 2, 9, 22

*Liner v. Jafco, Inc.*,
   375 U.S. 301 (1964)........................................................................................................... 10

*Lion Raisins, Inc. v. United States*,
   416 F.3d 1356 (Fed. Cir. 2005).......................................................................................... 16

*Little River Lumber Co. v. United States*,
   7 Cl. Ct. 492 (1985) .......................................................................................................... 22

*Livingston v. Derwinski*,
   959 F.2d 224 (Fed. Cir. 1992)............................................................................................ 17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................................................................. 8

*Martinez v. United States*,
   333 F.3d 1295 (Fed. Cir. 2003).......................................................................................... 16

*MC Mgmt. of Rochester LLC v. Biden*,
   No. 6:22-6337, 2023 WL 4194771 (W.D.N.Y. June 27, 2023) ....................................... 9, 22

*McCarthy v. United States*,
   No. 21-2272, 2022 WL 17078026 (Fed. Cl. Nov. 18, 2022)............................................... 16

*McNabb v. United States,*
  54 Fed. Cl. 759 (2002) ............................................................................ 17

*Me. Cmty. Health Options v. United States,*
  140 S. Ct. 1308 (2020) ........................................................................... 14

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of the City of Milwaukee,*
  708 F.3d 921 (7th Cir. 2013) ..................................................................... 9

*Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.,*
  915 F.3d 764, 770 (Fed. Cir. 2019) ............................................................. 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ................................................................................. 16

*Murphy v. United States,*
  993 F.2d 871 (Fed. Cir. 1993) ................................................................. 16

*Murphy v. United States,*
  No. 21-1422, 2022 WL 2187680 (Fed. Cl. June 16, 2022*)* ..................................... 16

*Nat'l Corn Growers Ass'n v. Baker,*
  840 F.2d 1547 (Fed. Cir. 1988) ............................................................... 17

*Perri v. United States,*
  340 F.3d 1337 (Fed. Cir. 2003) ............................................................... 12

*Portland Mint v. United States,*
  160 Fed. Cl. 642 (2022) ......................................................................... 16

*Reboot Macon, LLC v. United States,*
  No. 5:21-221, 2023 WL 4672395 (M.D. Ga. July 20, 2023) ........................... 11, 22

*Rick's Mushroom Serv., Inc. v. United States,*
  521 F.3d 1338 (Fed. Cir. 2008) ............................................................... 21

*Russell v. United States,*
  78 Fed. Cl. 281 (2007) ........................................................................... 17

*Samish Indian Nation v. United States,*
  419 F.3d 1355 (Fed. Cir. 2005) ............................................................... 12

*Schneiter v. United States,*
  159 Fed. Cl. 356 (2022) ......................................................................... 16

*Shearin v. United States,*
  992 F.2d 1195 (Fed. Cir. 1993) ............................................................... 21

*Starr Int'l Co., Inc. v. United States*,
   856 F.3d 953 (Fed. Cir. 2017)..................................................................7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)....................................................................................7

*Stone v. United States*,
   152 Fed. Cl. 649 (2021) ..........................................................................16

*Stroughter v. United States*,
   89 Fed. Cl. 755 (2009) ............................................................................17

*Superior Waste Mgmt. LLC v. United States*,
   --- Fed. Cl. ---, 2024 WL 101866 (2024).................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)..................................................................................3

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)..................................................................................8

*United States v. Mitchell*,
   445 U.S. 535 (1980)..................................................................................7

*United States v. Testan*,
   424 U.S. 392 (1976).............................................................................7, 12

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021)..............................................................................10

*Vitolo v. Guzman*,
   999 F.3d 353 (6th Cir. 2021) ...............................................................2, 13

*Wopsock v. Natchees*,
   454 F.3d 1327 (Fed. Cir. 2006)..............................................................16

## STATUTES

5 U.S.C. § 702..............................................................................................13

5 U.S.C. § 706(2)(A).....................................................................................12

5 U.S.C. § 706(2)(C).....................................................................................12

5 U.S.C. § 706(2)(D).....................................................................................12

5 U.S.C. §§ 701-706 .................................................................................................... 12

15 U.S.C. § 9009(b)(3) .............................................................................................. 20

15 U.S.C. § 9009c(a)(3) ............................................................................................ 10

15 U.S.C. § 9009c(a)(3)(B) ..................................................................................... 2, 3

15 U.S.C. § 9009c(a)(4) ............................................................................................. 2

15 U.S.C. § 9009c(b)(1)-(2)(A) ................................................................................. 1

15 U.S.C. § 9009c(b)(2)(A) ...................................................................................... 11

15 U.S.C. § 9009(c) ................................................................................................... 1

15 U.S.C. § 9009c(c)(1) ....................................................................................... 2, 19

15 U.S.C. § 9009c(c)(3)(A) ....................................................................................... 2

15 U.S.C. § 9009c(c)(5) ...................................................................................... 2, 10

15 U.S.C. § 9009c(c)(6) .................................................................................. 2, 10, 11

28 U.S.C. § 1346(b)(1) ............................................................................................ 17

28 U.S.C. § 1491 .................................................................................................... 6, 7

28 U.S.C. § 1491(a) ................................................................................................. 17

28 U.S.C. § 1631 ..................................................................................................... 21

28 U.S.C. § 2671 ..................................................................................................... 17

Pub. L. No. 117-2, 135 Stat. 4 (March 11, 2021) ................................................. 1, 3

Pub. L. No. 118-5, 137 Stat. 10 (June 3, 2023) ................................................... 3, 11

**RULES**

Rule 12(b) ................................................................................................................. 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 112 GENESEE STREET, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 23-1876C |
| | ) | Judge Richard Hertling |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiffs, 303 businesses in the restaurant industry, for lack of subject-matter jurisdiction. The Court does not possess jurisdiction to entertain plaintiffs' claims for numerous reasons.

## INTRODUCTION

This case concerns the Restaurant Revitalization Fund (RRF), a fund created by Congress and overseen by the Small Business Administration (SBA) to help restaurants recover from losing revenue due to the COVID-19 pandemic. Congress enacted the American Rescue Plan Act of 2021 (ARPA), Pub. L. No. 117-2, 135 Stat. 4 (2021), on March 11, 2021. Section 5003 of ARPA (later codified at 15 U.S.C. § 9009c) created the RRF and appropriated $28.6 billion to be awarded as grants by the SBA to eligible entities.[1] 15 U.S.C. § 9009c(b)(1)-(2)(A). Congress also set various eligibility criteria for recipients, restricted the potential uses for awards, and

---

[1] Although the statute that forms the basis for this complaint is now codified at 15 U.S.C. § 9009c, plaintiffs refer to it as section 5003 of the American Rescue Plan Act throughout their complaint. To avoid confusion, we will use the same terminology, but cite to the current codification.

required recipients to use their awards "[d]uring [a] covered period" ending no later than March 11, 2023.  *Id.* § 9009c(c)(5); *see id.* § 9009c(a)(3)(B) & (a)(4).  If a recipient failed to use its entire award before the covered period ended, Congress required the recipient to return any unused funds to the Treasury.  *See id.* § 9009c(c)(6).

Congress also required SBA to "prioritize awarding grants to eligible entities" that were either "small business concerns owned and controlled by women," "small business concerns owned and controlled by veterans," or "socially and economically disadvantaged small business concerns" – a term defined by statute – for the first twenty-one days.  *Id.* § 9009c(c)(3)(A).[2]  The statute stated that except as provided in the creation of the priority program, SBA "shall award grants to eligible entities in the order in which applications [we]re received by the Administrator."  *Id.* § 9009c(c)(1).

SBA accepted RRF applications through an online portal from May 3 to May 24, 2021.[3] *See* Compl. at ¶¶ 53-58.  At the end of June 2021, SBA stopped processing RRF applications because all funds available for awards had been disbursed.  *Id.* at ¶¶ 67, 75.  Later, in November 2022, approximately $83 million had become available for new RRF awards.  *Id.* at ¶ 69.  SBA awarded this money to applications that had been fully processed as of June 30, 2021.  *Id.*

---

[2] A divided motions panel of the U.S. Court of Appeals for the Sixth Circuit later concluded that this twenty-one-day priority for small business concerns owned and controlled by women and for socially and economically disadvantaged small business concerns likely violated the Fifth Amendment's equal-protection guarantee.  *See Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021).  A district judge in the Northern District of Texas reached the same conclusion in two other cases.  *See Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638 (N.D. Tex. 2021); Order, *Blessed Cajuns LLC v. Guzman*, No. 4:21-677 (N.D. Tex. May 28, 2021) (ECF No. 18).

[3] SBA decided to stop accepting applications on May 24, 2021 due to "overwhelming demand" that "rapidly dwarfed the allocation of funds set aside by Congress . . . ."  *Kingsley Restaurants, Inc. v. United States Small Bus. Admin.*, No. 1:21-CV-2314-SCJ, 2021 WL 8441778, at *1 (N.D. Ga. Aug. 24, 2021).

On March 11, 2023, the covered period expired.  *See* 15 U.S.C. § 9009c(a)(3)(B) (giving the SBA's Administrator authority to extend the covered period up to March 11, 2023); Press Release No. 21-33 (Apr. 27, 2021), https://perma.cc/2XUG-4ZXL (exercising that authority).[4] At that point, the statute required recipients to return any unused funds to the Treasury.

The story of the RRF ended with the Fiscal Responsibility Act, which became law on June 3, 2023. *See* Pub. L. No. 118-5, 137 Stat. 10.  As part of a bipartisan agreement to suspend the public debt limit through January 1, 2025, the law rescinded unobligated funds from at least eighty-one different Federal programs, including the RRF.  *See id.* § 52, 137 Stat. at 28 ("The unobligated balances of amounts made available by section 5003(b)(2)(A) of Public Law 117-2 are hereby permanently rescinded.").

Despite the completion of the covered period and the rescinding of unobligated funds, plaintiffs come before this Court seeking to receive payments by the Government that equal the RRF grants that they applied for but did not receive.  Compl. at ¶ 153.  Plaintiffs proceed on the theory that they would have received RRF grants but-for various alleged errors, negligent conduct, and arbitrary and capricious acts and omissions on the part of SBA.  *Id.* at ¶¶ 143, 149. However, plaintiffs' artful and lengthy pleading, with its invocation of an alleged money-mandating statute and demand for money-damages, cannot alter the fact that they challenge SBA's administration of the RRF program.  Such a claim can only be brought in district court – or it could have been, if plaintiffs did not lack standing and the case were not moot due to the completion and roll-up of the RRF program.  These compounded problems are fatal to this Court's jurisdiction.

---

[4] The Court may take judicial notice of factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).

## STATEMENT OF THE ISSUE

1.      Whether the Court does not possess jurisdiction to entertain plaintiffs' complaint because plaintiffs lack standing.

2.      Whether the Court does not possess jurisdiction to entertain plaintiffs' complaint because the case is moot.

3.      Whether the Court does not possess jurisdiction to entertain plaintiffs' complaint because section 5003 of ARPA is not money-mandating.

4.      Whether the Court does not possess jurisdiction to entertain plaintiffs' complaint because it is well-established that the Court cannot hear cases based on claims of arbitrary and capricious agency actions or negligence.

## STATEMENT OF FACTS

Plaintiffs are 303 businesses in the restaurant industry.  *Id.* at ¶ 13.  Plaintiffs allege that they applied for RRF grants on the first day that SBA's online portal opened for applications and submitted complete and eligible applications.  *Id.* at ¶¶ 4, 131-132.  However, plaintiffs did not receive RRF funds.  *Id.* at ¶¶ 9, 83, 135, 149.

In essence, plaintiffs set forth a variety of alleged errors by SBA in its administration of the RRF program and claim that if the SBA had acted differently, they would have received RRF funds because they were amongst the first applicants.  *Id.* at ¶143.  Plaintiffs particularly focus on the idea that SBA was required to award grants in the order that applications were received, yet instead awarded grants in the order that applications were processed and approved.  *Id.* at ¶¶ 8, 46(a), 73-76, 79, 82, 84, 91.  Relatedly, plaintiffs allege that SBA failed to treat priority and non-priority applicants on equal footing after Federal courts found the program's prioritization scheme to be unconstitutional when it did not award grants in the order applications were

4

received, regardless of priority status. *Id.* at ¶ 80. In plaintiffs' view, SBA's method of awarding grants "misallocated" funds to businesses that applied later in time than them. *Id.* at ¶¶ 83, 128, 135-136, 140-142, 148-152.

Plaintiffs also raise a large number of other alleged SBA errors. Plaintiffs claim that the SBA did not have sufficient pre-award controls to stop fraud or verify applicants' gross receipts, *id.* at ¶¶ 84-92, did not properly review applications and resolve issues, *id.* at ¶¶ 95-98, did not manage the online portal properly, *id.* at ¶¶ 99-101, failed to take reasonable measures to detect fraud, *id.* at ¶¶ 102-105, unlawfully applied program procedures, *id.* at ¶¶ 106-110, did not perform an assessment of the effectiveness of its pre-award controls, *id.* at ¶¶ 111-115, failed to enforce reporting requirements, *id.* at ¶¶ 116-119, failed to act to recover fraudulent, misused, or unused funds, *id.* at ¶¶ 120-123, incorrectly implemented payment processing, *id.* at ¶¶ 124-126, and did not perform an estimate of misallocated funds, *id.* at 127. Again, plaintiffs assert that these issues caused the SBA to "misallocate" some amount of the program funds towards undeserving or fraudulent parties, rather than award grants to plaintiffs. *Id.* at ¶¶ 128, 135-136. Plaintiffs also allege instances in which the SBA applied its rules too strictly and excluded plaintiffs' applications from being considered and funded. *See id.* at ¶ 77.

Plaintiffs claim that section 5003 of ARPA is money-mandating. *Id.* at ¶¶ 31-34. Plaintiffs assert that SBA violated section 5003. However, plaintiffs describe the alleged statutory violation as SBA's actions in "awarding grants to entities whose applications were received after applications submitted by eligible entities whose grants were not awarded due to SBA errors and purported exhaustion of funds." *Id.* at ¶ 35. Thus, although facially tied to a claim of a violation of an alleged money-mandating statute, the complaint focuses on the alleged SBA errors described above and declares that SBA acted unlawfully, negligently, and arbitrarily

and capriciously in administering the RRF program.  Plaintiffs demand at least $252,669,378.20, plus costs, fees, and interest.  *Id.* at Prayer for Relief.

## SUMMARY OF THE ARGUMENT

Plaintiffs' complaint presents a comprehensive and detailed review of the importance of the restaurant industry, the impact of the COVID-19 pandemic on this industry, and the establishment and operation of the RRF program.  Plaintiffs then set forth a catalogue of alleged errors, problems, and failures on the part of SBA in its administration of the RRF program. Despite the confidence with which plaintiffs assert that section 5003 of ARPA is money-mandating and that they are collectively entitled to a substantial amount of money damages, the claims that they put forth and theories that they use are not within this Court's limited jurisdiction.  The text of the statute does not contain any mandate for Government payment, but only sets forth a method of application administration.  And it is well-established that this Court cannot redress general claims of an agency's mismanagement of a statutory program. Furthermore, even before the substance of the complaint is considered, plaintiffs' case cannot succeed because they lack standing and the matter is moot.  For this reason, transfer to district court would be futile.  The Court should dismiss the complaint for lack of subject matter jurisdiction.

## ARGUMENT

### I.    Standard Of Review

Subject matter jurisdiction is a threshold requirement that must be determined at the outset of a case.  *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). The jurisdiction of the United States Court of Federal Claims is established and limited by the Tucker Act.  *See* 28 U.S.C. § 1491.  The Tucker Act is a waiver of sovereign immunity, and it

must be strictly construed.  *See United States v. Mitchell,* 445 U.S. 535, 538 (1980).

The Tucker Act grants the Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491.  The Tucker Act, however, is merely "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon it whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Thus, "a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*).  If this Court's subject matter jurisdiction is challenged, the non-moving party must establish that this Court has jurisdiction over the dispute.  *See Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998).

## II.    <u>The Court Should Dismiss The Case Because Plaintiffs Lack Standing</u>

As a preliminary matter, the Court should dismiss this case because plaintiffs lack standing.  Article III of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies."  § 2, cl. 1.  The Court of Federal Claims, "though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III."  *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)) (internal quotation marks omitted).  Standing is a jurisdictional issue.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998).  Like other Article III requirements, standing is most accurately characterized as a prerequisite to subject matter jurisdiction.  *See Superior Waste Mgmt. LLC v. United State*s, --- Fed. Cl. ---,

2024 WL 101866 at *4 (2024) (collecting cases).

"To establish a case or controversy, a party invoking federal jurisdiction must meet the 'irreducible constitutional minimum of standing.'"  *Allgenesis Biotherapeutics Inc. v. Cloudbreak Therapeutics, LLC*, 85 F.4th 1377, 1380 (Fed. Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  To demonstrate standing, a plaintiff must show: (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.  *Lujan*, 504 U.S. at 560-561.  A plaintiff therefore must claim to have suffered an injury that the defendant caused and that the court can remedy.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  These requirements are essential because:

> [u]nder Article III, federal courts do not adjudicate hypothetical or abstract disputes.  Federal courts do not possess a roving commission to publicly opine on every legal question.  Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities.  And federal courts do not issue advisory opinions.

*Id.*  Although plaintiffs seek to have this Court opine on the quality of SBA's administration of the RRF program, there is no live case or controversy here.  Even assuming *arguendo* that plaintiffs meet the first two criteria in *Lujan*, any alleged injury cannot be redressed by the Court because the RRF program no longer has any funding to award grants.

Plaintiffs speculate that there is or could be money available that could presumably be distributed to them, alleging that "[a]s of June 2022, approximately $180 million of RRF funding remained without recorded obligations, including $24 million set aside for litigation" and "[o]n information and belief, available RRF funding will increase in fiscal year 2024 as a result of SBA's mandatory required audit and recovery efforts that will be ongoing through at least July 2024."  Compl. at ¶¶ 68, 70.  However, this does not provide a basis for standing.

In fact, district courts dealing with the speculation that the RRF has money available have already ruled against the plaintiffs on this issue.  *See Infidels, LLC v. Guzman*, No. 3:22-391, 2023 WL 5599605, at *3 (M.D. Tenn. Aug. 29, 2023); *MC Mgmt. of Rochester LLC v. Biden*, No. 6:22-6337, 2023 WL 4194771, at *4 (W.D.N.Y. June 27, 2023); *Kingsley Rests., Inc. v. United States Small Bus. Admin.*, No. 1:21-2314, 2021 WL 8441778, at *3 (N.D. Ga. Aug. 24, 2021) (unreported); *cf. Keener v. United States*, No. 2:22-1640, 2023 WL 2478367, at *6 (D.S.C. Mar. 13, 2023).  For example, a district court held that a plaintiff's "offhand suggestion that the RRF may obtain more funding in the future through either audits or future Congressional allocations [] fails to establish the existence of a live case or controversy" and noted that "the SBA did not voluntarily cease processing RRF applications – the Fund simply ran out of money to allocate."  *Kingsley Rests., Inc.*, 2021 WL 8441778, at *3.  As that court concluded, "[t]hat the RRF may be refunded is entirely speculative," and unsuccessful RRF applicants cannot presume otherwise to obtain standing.  *Id.*  Similarly, a different district court held that the plaintiffs had not satisfied "the most basic threshold burden" of standing when they brought their claim for declaratory relief after the completion of the priority period and after all of the appropriated funds had been distributed.  *Infidels, LLC*, 2023 WL 5599605, at *3 (M.D. Tenn. Aug. 29, 2023). This Court should reach the same conclusion, and likewise dismiss this case.

III.     **The Court Should Dismiss The Case Because Plaintiffs' Claims Are Moot**

Alternatively, even if plaintiffs' claim was redressable at the time they filed their complaint, the Court should also dismiss because plaintiffs' claims are moot.  *See Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.*, 915 F.3d 764, 770 (Fed. Cir. 2019) ("In essence, 'mootness is the doctrine of standing set in a time frame; that is, the requisite personal interest that must exist at the time of commencement of the litigation (standing) must continue

throughout its existence (mootness).'") (quoting *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of the City of Milwaukee*, 708 F.3d 921, 929–30 (7th Cir. 2013)).  "The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3 (1964)).  As stated above, to demonstrate standing, a plaintiff "must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury."  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). "And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot."  *Id.*

Here, two events make it impossible for the Court to grant meaningful relief: the expiration of the RRF's statutory covered period and the passage of the Fiscal Responsibility Act.  In essence, no matter what the Court orders, no additional funds remain available for new awards, and even if there were, any awardee receiving such funds would be required to immediately return these funds to the Treasury.

First, with regard to the covered period, section 5003 of ARPA required that all RRF awards be "use[d]" during the statutory "covered period," which began on February 15, 2020, and expired on December 31, 2021, but could be extended to, but no further than, March 11, 2023, at the discretion of the SBA's Administrator.  15 U.S.C. § 9009c(a)(3); 15 U.S.C. § 9009c(c)(5).  The SBA's Administrator did subsequently extend the covered period to March 11, 2023.  *See* Press Release No. 21-33 (Apr. 27, 2021), https://perma.cc/2XUG-4ZXL.  However, this date has now obviously passed.  Plaintiffs themselves acknowledge the existence of the covered period.  Compl. at ¶ 27(a).

Importantly, section 5003 required that if an eligible entity failed to use all grant funds or permanently ceased operations on or before the last day of the covered period, "the eligible entity shall return to the Treasury any funds that the eligible entity did not use." 15 U.S.C. § 9009c(c)(6).  Now that the covered period is over, even an order directing SBA to award plaintiffs' grants could not provide any meaningful relief because they would immediately have to return the money to the Treasury.

As a district court thus recognized, given "the plain language of the ARPA which says that any funds not used during the covered period *shall* be returned to the Treasury," claims challenging SBA's failure to fund an RRF award became non-redressable on March 11, 2023, when the covered period expired.  *Reboot Macon, LLC v. United States*, No. 5:21-221, 2023 WL 4672395, at *5 (M.D. Ga. July 20, 2023); *cf. Keener*, 2023 WL 2478367, at *7 ("However, if defendants were to show evidence that the RRF program lacks funds, at that point plaintiffs' claims would be moot.").  The *Reboot Macon* court dismissed on mootness grounds and noted that it could not "tack on a carve out to § 9009c(c)(6)" for cases where SBA "bungled the processing of the eligible entity's claims." *Id.*  That conclusion applies with equal force to these plaintiffs.

Second, the Fiscal Responsibility Act "permanently rescinded" any "unobligated balances of" the $28.6 billion "made available by" 15 U.S.C. § 9009c(b)(2)(A).  137 Stat. at 28. Plaintiffs' suggestion that RRF funding will increase due to SBA's audit and recovery efforts and thus be accessible to them in some way is incorrect.  Even if SBA recovers fraudulent awards, that money no longer remains practically or legally "available."  In short, SBA has no appropriation authority for new awards, nor could recipients even use an award: any theoretical

award would have to immediately go back to the Treasury.  In addition to plaintiffs' lack of standing, the Court should dismiss the complaint as moot.

IV.    **The Court Does Not Possess Subject-Matter Jurisdiction Because Section 5003 Of ARPA Is Not Money-Mandating**

When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, the Court must, at the outset, determine whether this source is money-mandating.  *Fisher*, 402 F.3d at 1173.  The absence of a money-mandating source is "fatal" to the Court's jurisdiction.  *Id.*  Plaintiffs' complaint contains several bare legal conclusions that section 5003 of ARPA is money-mandating.  *See* Compl. at ¶¶ 31-35.  However, even if the Court would attempt to consider plaintiffs' claims as a pure violation of statutory terms, excluding the allegations of arbitrary and capricious actions and negligence, the text of section 5003 demonstrates that it is not money-mandating.

"Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."  *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967); *see also Testan*, 424 U.S. at 400.  A statute is generally understood to be money-mandating when the Government does not have any discretion to pay funds once the requirements of the statute are met.  *See id.* at 1175; *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005).  However, "[c]ertain discretionary schemes also support claims within the Court of Federal Claims jurisdiction," including "statutes: (1) that provide 'clear standards for paying' money to recipients; (2) that state the 'precise amounts' that must be paid; or (3) as interpreted, compel payment on satisfaction of certain conditions."  *Samish Indian Nation*, 340 F.3d at 1364-65 (quoting *Perri v. United States*, 340 F.3d 1337, 1342-43 (Fed. Cir. 2003)).

The only portion of section 5003 of ARPA raised by plaintiffs as money-mandating states that, except as provided in the provisions creating the priority program, the SBA Administrator "shall award grants to eligible entities in the order in which applications are received by the Administrator."  Compl. at ¶¶ 31-35; 15 U.S.C. § 9009c(c)(1).  This sentence does not, however, actually require that SBA pay all eligible applicants and thus cannot be fairly interpreted as money-mandating.  Instead, it only speaks to the method of application administration and processing of award disbursements.  If Congress had intended SBA to award grants after the priority period to all eligible entities, all eligible entities who applied in the first hour, or all eligible entities who applied in the first day, it would have said so.  Additionally, plaintiffs themselves focus on SBA's need to apply pre-award controls and thus Congress could not have intended SBA to hand out money without an eligibility determination, which would naturally take longer for some companies than others.[5]  Congress chose not to include any "shall pay"

---

[5]  We thus do not agree that paying applications in approval order was contrary to statute or arbitrary and capricious.  Because 15 U.S.C. § 9009c(c)(1) limited SBA to awarding to "eligible entities," SBA had to confirm an applicant's eligibility before issuing an award.  During initial RRF operations when SBA faced a deluge of applications, SBA had a choice: either no money could be disbursed until the first-filed application was processed to approval – even if that application was so complex and error-ridden that processing took weeks, holding up badly needed relief in the middle of an unprecedented global pandemic – or SBA could allow later-filed/earlier-processed applications to be paid before earlier-filed/later-processed applications.  SBA reasonably chose the latter path, which was consistent with the statutory text.  Notably, plaintiffs' argument is undermined by their criticism of SBA for insufficiently detecting fraud and other issues that would have made applicants ineligible.  By such allegations, plaintiffs demonstrate their understanding of SBA's need to review and process applications before disbursing money.

Furthermore, the phrase "received by" suggests that Congress intended SBA's eligibility confirmation to impact payment order.  *See* Receive, Oxford English Dictionary (3d ed. 2009) ("To admit or accept (a person or thing)").  Additionally, the Sixth Circuit recognized that after the priority period, "[t]he statute now requires [SBA] to *begin processing* grant requests in the order they were received, without regard to the applicants' race or sex."  *Vitolo*, 999 F.3d at 359 (emphasis added).

language that creates both a right and a remedy.  *See Me. Cmty. Health Options v. United States,* 140 S. Ct. 1308, 1329 (2020).

Indeed, in a different section, 15 U.S.C. § 9009(b)(3), entitled "Use of Funds," states that, "[t]he Administrator shall use amounts in the Fund to make grants described in subsection (c)." This language also demonstrates that Congress empowered SBA generally to make grants from the $28.6 billion fund to entities that meet the eligibility criteria.  But Congress did not require SBA to specifically make payments to any applicant.  Therefore, nothing in section 5003 can be fairly interpreted as mandating compensation by the Government.

Although alleging that section 5003 contains mandatory "shall" language, plaintiffs also confusingly appear to invoke the idea that section 5003 meets the test for a discretionary scheme that is within this Court's jurisdiction per *Samish Indian Nation*, because it "supplies a clear standard for the payment of money" or requires applicants to satisfy "objective criteria."  Compl. at ¶ 32.  However, the statute states standards and conditions that *applicants* must meet, but nothing in its text compels *SBA* to pay upon receipt of a satisfactory application.  There is nothing unusual about a benefits program requiring applicants to fulfill eligibility criteria, and the presence in section 5003 of provisions describing these criteria or how the amount of grants will be calculated does not put any obligation on the Government to pay.  Congress therefore did not create a rare money-mandating obligation.  *See Me. Cmty. Health Options*, 140 S. Ct. at 1331.

The theory pursued by plaintiffs also confirms that section 5003 is not money-mandating. Plaintiffs do not simply claim that they submitted eligible applications but were not awarded grants, contrary to a statutory mandate.  Instead, they put forth an indirect theory that section 5003 required SBA to award RRF grants in the order that applications were received and that

SBA's decision to award grants instead in the order that applications were processed, along with other issues, allowed applicants who had applied later in time than plaintiffs, or were ineligible to receive an RRF award, to receive the money instead.  *See* Compl. at ¶¶ 7, 9, 75, 83, 128, 135, 142-153.  Plaintiffs attribute the fact that they did not receive RRF grants to SBA's alleged unlawful, arbitrary, capricious, and negligent acts or omissions.  *See id.*  This theory is not based on a direct violation of a money-mandating statutory provision, but instead depends wholly on a determination by the Court that SBA acted arbitrarily, capriciously, or negligently, which, as we discuss below, is outside of the Court's jurisdiction.  *See id.* at ¶ 128.

## V.      The Court Does Not Possess Subject-Matter Jurisdiction Over Claims That A Government Agency Acted Arbitrarily And Capriciously

Separate from the problems posed by the doctrines of standing and mootness, the Court does not possess subject-matter jurisdiction over the substance of plaintiffs' claims.  The crux of plaintiffs' complaint is that SBA managed the RRF program in various arbitrary and capricious ways.  According to plaintiffs, SBA's arbitrary and capricious acts and omissions prevented them from receiving funding by allowing money to be distributed to other applicants who submitted applications after plaintiffs.  However, these allegations are plainly outside of the Court's subject-matter jurisdiction.

Although plaintiffs do not cite or reference the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706, it is the provisions of this statute that waive sovereign immunity in certain situations to allow a person suffering legal wrong because of final agency action to obtain judicial review.  Section 706 of the APA empowers courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"  5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction," *id*. § 706(2)(C), or "without observance of procedure required by law[.]"  *Id.*

15

§ 706(2)(D); *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Plaintiffs' central allegations, not merely in language but in substance, that SBA engaged in numerous unlawful and arbitrary and capricious acts and omissions can be nothing other than an APA claim.[6] *See Portland Mint v. United States*, 160 Fed. Cl. 642, 664 (2022) (citations omitted).

Crucially, and fatally to plaintiffs' complaint, the Federal Circuit has repeatedly and expressly held that this Court does not possess jurisdiction over APA claims. *See Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n. 11 (Fed. Cir. 2005); *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003); *Crocker v. United State*s, 125 F.3d 1475, 1476 (Fed. Cir. 1997); *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993).[7] This Court lacks jurisdiction to decide APA claims because the APA is not money-mandating. *See Martinez*, 333 F.3d at 1313; *see also Harlem Globetrotters Int'l, Inc. v. United States*, 168 Fed. Cl. 31, 42 (2023); *Banerjee v. United States*, 77 Fed. Cl. 522, 534 (2007).

The Federal Circuit has held that "the APA does not authorize an award of money damages at all; to the contrary, [S]ection 10(a) of the APA, 5 U.S.C. § 702, specifically limits the Act to actions seeking relief other than money damages." *Wopsock v. Natchees*, 454 F.3d 1327,

---

[6] We do not concede that plaintiffs present allegations that merit any relief under the Administrative Procedures Act (APA). However, the nature of their allegations is most properly considered an APA claim.

[7] Just within the past few years, numerous decisions of the Court of Federal Claims have properly applied this precedent and dismissed such claims for lack of jurisdiction. *See, e.g.*, *Gilham v. United States*, 164 Fed. Cl. 1, 8-9 (2023), *aff'd*, No. 2023-1507, 2023 WL 5814413 (Fed. Cir. Sept. 8, 2023); *Schneiter v. United States*, 159 Fed. Cl. 356, 367 (2022); *Portland Mint v. United States*, 160 Fed. Cl. 642, 664 (2022); *McCarthy v. United States*, No. 21-2272, 2022 WL 17078026, at *4 (Fed. Cl. Nov. 18, 2022); *Murphy v. United States*, No. 21-1422, 2022 WL 2187680, at *10 (Fed. Cl. June 16, 2022*); *Stone v. United States*, 152 Fed. Cl. 649, 655 (2021); *Braun v. United States*, 144 Fed. Cl. 560, 572-73 (2019).

1333 (Fed. Cir. 2006).  Because the APA is not money-mandating, it does not provide a basis for jurisdiction in this Court under the Tucker Act.  *See Fisher*, 402 F.3d at 1172.  It is well-established that the APA confers jurisdiction for judicial review of agency decisions to the United States district courts and not the Court of Federal Claims.  *See Strougher v. United States*, 89 Fed. Cl. 755, 763 (2009); *Russell v. United States*, 78 Fed. Cl. 281, 288 (2007); *McNabb v. United States*, 54 Fed. Cl. 759, 767 (2002).  In addition, "the APA is not a jurisdictional statute and does not confer jurisdiction on a court not already possessing it."  *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1559 (Fed. Cir. 1988).

Accordingly, plaintiffs cannot shoehorn themselves into the limited jurisdiction of the Court just by requesting the payment of money, when the nature of their allegations in essence is an APA claim challenging SBA's decisions in administering the RRF program.  Plaintiffs claim that SBA's unlawful, negligent, and/or arbitrary and capricious acts and omissions give rise to money damages.  *See* Compl. at ¶¶ 10-11, 153.  However, regardless of the characterization of the case by plaintiffs, the Court must "look to the true nature of the action in determining the existence or not of jurisdiction."  *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994) (citing *Livingston v. Derwinski*, 959 F.2d 224, 225 (Fed. Cir. 1992)).  Simply claiming money damages attributed to various agency wrongs does not move an APA case into the jurisdiction of the Court of Federal Claims.

The Supreme Court explained the delineation between the Tucker Act and APA waivers of sovereign immunity in *Bowen v. Massachusetts*, 487 U.S. 879 (1988).  In *Bowen*, the Commonwealth of Massachusetts brought suit in district court challenging the refusal of the Secretary of Health and Human Services to reimburse it for funds it expended under a Medicaid program and the court of appeals affirmed in favor of the State.  *See* 487 U.S. 879, 885-89

17

(1988).  In its petition for certiorari, the Secretary argued that the Claims Court had exclusive jurisdiction over the claim, not the district court.  *Id.* at 890-91.

The Supreme Court rejected this argument, holding that the relief sought by the State, the release of Medicaid funds, was not "money damages," and that the case was not excluded from the waiver of sovereign immunity in section 702 of the APA.  *Id.* at 893.  In particular, the Supreme Court noted that the State's case "is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money."  *Id.* at 900 (emphasis in original).  Any payment made by the Government would be "a mere by-product of [the district court's] primary function of reviewing the Secretary's interpretation of federal law."  *Id.* at 910.

Here, similarly, plaintiffs are attempting to enforce what they assert is the statutory mandate for SBA to award grants in the order that applications were received.  By extension, they seek specific relief in the form of the payment of money that they believe that they should have received under their preferred statutory interpretation.  *Id.* at 901.  Any money paid would not be in compensation for an injury or labor, but would be a byproduct of a determination that SBA wrongfully and arbitrarily and capriciously administered the RRF program.  *See* Compl. at ¶ 8-11.  This is not a claim for "money damages" as required by the Tucker Act.

The Federal Circuit ruling in *Katz v. Cisneros*, 16 F.3d 1204 (Fed. Cir. 1994) also confirms that the Court does not possess subject-matter jurisdiction over plaintiffs' claim.  In *Katz*, the owner of the company Hollywood Associates Limited Partnership (Hollywood Associates) appealed an order of a district court transferring his case to the Court of Federal Claims.  *Katz*, 16 F.3d at 1205.  The case involved the Government's Section 8 housing program.

18

*Id.*  In administering the Section 8 program, the Department of Housing and Urban Development (HUD) entered into contracts with Public Housing Agencies (PHAs).  *Id.*  A PHA would then enter into contracts with private developers to rehabilitate housing and provide rental units.  *Id.*  These contracts contained provisions for the amount of contract rent paid by the PHA to the developer on the tenants' behalf.  *Id.*  Contract rent was determined by HUD regulations and was "based on the project owner's costs of acquiring, owning, managing and maintaining the rehabilitated units."  *Id.*

Hollywood Associates entered into such a contract and calculated the rent based on the interest rate of 9.25 percent received from its lender, plus costs, points, and other fees that it had to pay to obtain this rate.  *Id.* at 1206.  In the course of an audit performed by HUD, HUD determined that the contract rents being paid to Hollywood Associates were too high and should be based on the 9.25 percent interest rate only, without add-ons.  *Id.*  HUD ordered Hollywood Associates to reduce rents and recover overpayments.  *Id.*  Hollywood Associates challenged HUD's interpretation of its regulations and asserted that the upfront costs to its lender needed to be taken into account.  *Id.*  Hollywood Associates brought suit in district court, but the district court agreed with HUD that the case belonged in the Court of Federal Claims because it involved a Government contract.  *Id.*

However, the Federal Circuit held that, as in *Bowen*, Hollywood Associates "seeks payments to which it alleges it is entitled pursuant to federal statute and regulations; it does not seek money as compensation for a loss suffered."  *Id.* at 1208.  Hollywood Associates sought to "compel HUD to perform the calculation of contract rents" in accordance with its regulations. *Id.*  "That a payment of money may flow from a decision that HUD has erroneously interpreted or applied its regulation does not change the nature of the case."  *Id.*  Furthermore, because

Hollywood Associates sought an adjudication of the lawfulness of HUD's regulatory interpretation, this was prospective relief that would have a future impact on the ongoing relationship between the parties.  *Id.* at 1209.  Therefore, "no relief is available in the Court of Federal Claims here because the case challenges the interpretation of law which controls payment to Hollywood Associates."  *Id.*

To the extent that plaintiffs attempt to turn an APA claim into a Tucker Act claim for money-damages, the Court does not possess jurisdiction for the same reasons.  Plaintiffs similarly assert that SBA did not follow a "statutory mandate" in section 5003 of ARPA to award grants in the order in which applications were received.  *See* Compl. at ¶¶ 3, 5, 8, 9, 34.  This is a challenge to SBA's interpretation of a law that controls payment to entities like plaintiffs, no matter how it is dressed up in Tucker Act language.  Plaintiffs seek to hold as unlawful SBA's interpretation of section 5003 as not requiring payment to eligible applicants strictly based on their place in line.  *See id.* at ¶¶ 8-9, 75, 80, 149-151.  The essence of plaintiffs' allegations is that they did not receive free money from the Government while others, who applied later or had defective applications, obtained grant awards.  This is a claim for prospective relief under plaintiffs' chosen statutory interpretation, not compensation for a loss suffered.  Plaintiffs also seek to alter the relationship between the parties in the future.

Therefore, *Katz* is dispositive.  As was the case for Hollywood Associates, no relief is available under this Court's jurisdiction.  This Court does not possess jurisdiction to evaluate the lawfulness, justness, or reasonableness of SBA's actions and whether its management and administration of this statutory program was arbitrary and capricious, even if money is demanded as a remedy.

**VI.**     **The Court Does Not Possess Subject-Matter Jurisdiction Over Negligence Claims**

Plaintiffs extensively allege that SBA acted negligently in various aspects of its administration of the RRF program. *Id.* at ¶¶ 9, 77, 80-83, 85, 86, 87, 97, 100, 101, 103, 105, 108, 110, 114, 119, 126, 128, 142, 143, 151-153. Similarly, plaintiffs also allege that SBA was unreasonable or violated some "mandatory duty" inherent in section 5003 of ARPA. *Id.* at ¶¶ 100, 151. Plaintiffs plainly attempt to bring tort claims. However, again, it is well-established and non-controversial that this Court does not possess jurisdiction to entertain such claims.

The Tucker Act expressly removes tort actions from this Court's jurisdiction. 28 U.S.C. § 1491(a). The Federal Circuit has thus recognized that "[t]he plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Instead, the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* grants jurisdiction to hear tort claims exclusively to United States district courts. 28 U.S.C. § 1346(b)(1); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993). This Court "does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties." *Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998). Therefore, the Court does not possess jurisdiction to determine if SBA acted negligently in its administration of the RRF program.

**VII.**     **Transfer To A District Court Would Be Futile**

Pursuant to 28 U.S.C. § 1631, when the Court lacks jurisdiction over a case, it is to transfer the case to a different court where the lawsuit could have been brought if it is "in the interest of justice" to do so. 28 U.S.C. § 1631. However, although the complaint makes allegations that should be considered APA claims under district court jurisdiction, "a case should

not be transferred or retransferred to a [d]istrict [c]ourt if it most probably would be a futile act."
*Little River Lumber Co. v. United States*, 7 Cl. Ct. 492, 494 (1985) (citing *Dancy v. United States*, 229 Ct. Cl. 300, 308 (1982)).  Given that several district courts have correctly rejected claims of disappointed RRF applicants as lacking standing and for mootness, it would not be in the interest of justice to transfer a complaint with identical problems to district court.  *See Infidels, LLC*, 2023 WL 5599605, at *3; *MC Mgmt. of Rochester LLC*, 2023 WL 4194771, at *4; *Reboot Macon, LLC*, 2023 WL 4672395, at *5; *Kingsley Rests., Inc*, 2021 WL 8441778, at *3; *cf. Keener*, 2023 WL 2478367, at *7.  Therefore, the Court should dismiss the complaint and not transfer it elsewhere.

## **CONCLUSION**

For these reasons, we respectfully request that the Court grant this motion and dismiss the complaint lack of subject-matter jurisdiction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ William J. Grimaldi
WILLIAM J. GRIMALDI
Assistant Director

/s/ Rebecca S. Kruser
REBECCA S. KRUSER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 305-2035

rebecca.s.kruser@usdoj.gov

February 26, 2024                                    Attorneys for Defendant