No. 23-1876C
(Judge Richard Hertling)

_____

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

112 GENESEE STREET, LLC, *et al*.,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

_____

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

_____

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

REBECCA S. KRUSER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 305-2035
rebecca.s.kruser@usdoj.gov

April 22, 2024                    Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS ........................ 1

ARGUMENT ................................................................................................................ 1

    I.    The Court Should Dismiss Because Plaintiffs Lack Standing Or The Case Is
Moot ................................................................................................................ 1

        A.    Plaintiffs Cannot Avoid Article III Standing Or Mootness
Requirements ..................................................................................... 2

        B.    Plaintiffs' Redressability Arguments Incorrectly Assume That Section
5003 Of ARPA Is Money-Mandating And That They Are Entitled To
Grants ................................................................................................ 3

        C.    The Expiration Of The Covered Period Moots Plaintiffs' Claims ............ 6

    II.    The Court Does Not Possess Subject-Matter Jurisdiction Because Section 5003
Of  ARPA Is Not Money-Mandating ................................................................ 7

        A.    Plaintiffs Misread The Language Of Section 5003 Of ARPA .................... 7

        B.    Comparison To The Shuttered Venue Operators Grant Program Supports
Our Argument ..................................................................................... 9

    III.    The Court Does Not Possess Subject-Matter Jurisdiction Over Claims That A
Government Agency Acted Arbitrarily And Capriciously .................................. 10

        A.    Plaintiffs Fundamentally Misunderstand Tucker Act Jurisdiction ........... 11

        B.    Claiming Money As Damages Does Not Create Tucker Act
Jurisdiction ........................................................................................ 16

    IV.    The Court Does Not Possess Subject-Matter Jurisdiction Over Negligence
Claims ............................................................................................................ 19

    V.    Transfer To A District Court Would Be Futile .................................................... 20

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*ARRA Energy Co. I v. United States,*
   97 Fed. Cl. 12 (2011) ................................................................................................ 8

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ........................................................................................... passim

*BP Expl. & Prod., Inc. v. United States,*
   142 Fed. Cl. 579 (2019) ........................................................................................... 13

*Chef Time 1520 LLC v. SBA*
   646 F. Supp. 3d 101 (D.D.C. 2022) ......................................................................... 13

*Dancy v. United States,*
   229 Ct. Cl. 300 (1982) ............................................................................................. 20

*Davis v. Federal Election Comm'n,*
   554 U.S. 724 (2008) ................................................................................................... 2

*Duncan v. Walker,*
   533 U.S. 167 (2001) ................................................................................................... 8

*Eastport S. S. Corp. v. United States,*
   372 F.2d 1002 (Ct. Cl. 1967) ............................................................................... 7, 12

*Fisher v. United States,*
   402 F.3d 1167 (Fed. Cir. 2005) ............................................................................... 12

*Greenlee County, Arizona v. United States,*
   487 F.3d 871 (Fed. Cir. 2007) ................................................................................ 4, 5

*Harlem Globetrotters Int'l, Inc. v. United States,*
   168 Fed. Cl. 31 (2023) ............................................................................................. 10

*Hous. Auth. of Slidell v. United States,*
   149 Fed. Cl. 614 (2020) ...................................................................................... 14, 15

*Indiana Municipal Power Agency v. United States,*
   154 Fed. Cl. 752 (2021), *aff'd* 59 F.4th 1382, 1383 (Fed. Cir. 2023). ............ 4, 5, 6

*Kanemoto v. Reno,*
   41 F.3d 641 (Fed. Cir. 1994) ................................................................................... 12

*Katz v. Cisneros*,
    16 F.3d 1204 (Fed. Cir. 1994)........................................................................... 15, 16

*Kingsley Rests., Inc. v. United States Small Bus. Admin.*,
    No. 1:21-2314, 2021 WL 8441778 (N.D. Ga. Aug. 24, 2021) ................................. 3

*Little River Lumber Co. v. United States*,
    7 Cl. Ct. 492 (1985) ......................................................................................... 20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................ 2

*Me. Cmty. Health Options v. United States*,
    140 S. Ct. 1308 (2020)............................................................................... 3, 8, 19

*Martinez v. United States*,
    333 F.3d 1295 (Fed. Cir. 2003).......................................................................... 11

*MC Mgmt. of Rochester LLC v. Biden*,
    No. 6:22-6337, 2023 WL 4194771 (W.D.N.Y. June 27, 2023) ................................. 2

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
    139 S. Ct. 1652 (2019).......................................................................................... 3

*Mitchell v. United States*,
    930 F.2d 893) (Fed. Cir. 1991) .......................................................................... 12

*Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.*,
    915 F.3d 764 (Fed. Cir. 2019).............................................................................. 1

*Nat'l Ctr. for Mfg. Scis. v. United States*,
    114 F.3d 196 (Fed. Cir. 1997)............................................................................ 15

*Reboot Macon, LLC v. United States*,
    No. 5:21-221, 2023 WL 4672395 (M.D. Ga. July 20, 2023)..................................... 7

*Rick's Mushroom Serv., Inc. v. United States*,
    521 F.3d 1338 (Fed. Cir. 2008)........................................................................... 19

*Silver State Land LLC v. United States*,
    148 Fed. Cl. 217 (2020) ..................................................................................... 14

*Slattery v. United States*,
    635 F.3d 1298 (Fed. Cir. 2011)........................................................................... 14

*Starr Int'l Co., Inc. v. United States*,
856 F.3d 953 (Fed. Cir. 2017) ............................................................................ 2

*State of S. Carolina v. United States*,
144 Fed. Cl. 277 (2019) ...................................................................................... 4

*Steel Co. v. Citizens for a Better Env't*
523 U.S. 83 (1998) .............................................................................................. 1

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ............................................................................................ 2

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) .............................................................................................. 8

*United States v. Testan*,
424 U.S. 392 (1976) .......................................................................................... 11

*White Mountain Apache Tribe v. United States*,
249 F.3d 1364 (Fed. Cir. 2001) .......................................................................... 4

## STATUTES

5 U.S.C. § 706(2)(A) .......................................................................................... 11

15 U.S.C. § 9009a ................................................................................................ 9

15 U.S.C. § 9009a(b)(2)(A) ............................................................................... 10

15 U.S.C. § 9009a(b)(2)(C) ............................................................................... 10

15 U.S.C. § 9009c ............................................................................................... 10

15 U.S.C. § 9009c(b)(2)(A) ................................................................................. 3

15 U.S.C. § 9009c(a)(3) ....................................................................................... 6

15 U.S.C. § 9009c(c)(1) ................................................................................. 7, 13

15 U.S.C. § 9009c(c)(5) ....................................................................................... 6

15 U.S.C. § 9009c(c)(6) .................................................................................... 6, 7

28 U.S.C. 1491(a) ...............................................................................................

28 U.S.C. 1491(a)(1) .......................................................................................... 15

28 U.S.C. § 1631 ................................................................................................................ 20

31 U.S.C. § 1324 .................................................................................................................. 6

**RULES**

Rule 12(b)(1) ....................................................................................................................... 1

Rule 12(b)(6) ..................................................................................................................... 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 112 GENESEE STREET, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 23-1876C |
| | ) | Judge Richard Hertling |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant, the United States, respectfully submits this reply in support of its motion to dismiss. See ECF No. 7. In our motion, we demonstrated that the complaint filed by plaintiffs, 303 businesses in the restaurant industry, should be dismissed. Plaintiffs' opposition is based on incorrect theories regarding the scope and limitations of this Court's jurisdiction. Furthermore, plaintiffs fail to refute our argument that they lack standing or that the case is moot due to the conclusion of the Small Business Administration's (SBA) Restaurant Revitalization Fund (RRF) program. This Court should dismiss pursuant to Rule 12(b)(1).

### ARGUMENT

### I.    The Court Should Dismiss Because Plaintiffs Lack Standing Or The Case Is Moot

As we explained in our motion, the Court should dismiss this case because plaintiffs lack standing or the case is moot.[1] Both standing and mootness are jurisdictional issues. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998); *Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.*, 915 F.3d 764, 770 (Fed. Cir. 2019). Plaintiffs have not shown that the

---

[1] Although we separated our arguments regarding standing and mootness into two different subsections of our motion, plaintiffs combined their arguments on these topics under the general rubric of redressability. *See* Pls. Opp'n at 14-22. In order to avoid repetition, we will address standing and mootness together here.

injuries they claim to have suffered can be redressed by judicial relief.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

A.    **Plaintiffs Cannot Avoid Article III Standing Or Mootness Requirements**

Plaintiffs first raise the unfounded notion that simply alleging a claim for money damages automatically confers standing or prevents a case from ever becoming moot.  *See* Pls. Opp'n at 15.  Plaintiffs do not cite any authority for the idea that the redressability analysis for equitable claims is "fundamentally different" than for money damages claims or that invoking the Tucker Act by itself creates standing.[2]  *See id.*  Asserting money damages, as opposed to equitable relief, does not immunize a claim from a challenge to standing or mootness.[3]  Indeed, "standing is not dispensed in gross" but, "to the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'"  *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)).  The Court of Federal Claims, "though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III."  *Starr Int'l Co., Inc. v.*

---

[2]  Contrary to plaintiffs' suggestion, *see* Pls. Opp'n at 16, the district court in *MC Management of Rochester, LLC* did not state that the plaintiffs could have invoked the Tucker Act's waiver of sovereign immunity.  *See MC Mgmt. of Rochester LLC v. Biden*, No. 6:22-6337, 2023 WL 4194771, at *5 (W.D.N.Y. June 27, 2023).  Instead, the plaintiffs were seeking to sue the Small Business Administration's (SBA) Administrator in her individual capacity.  *Id.*

[3]  At best, plaintiffs' arguments only demonstrate that they too actually seek declaratory and/or equitable relief.  For example, in *MC Management of Rochester LLC*, the plaintiffs sought a declaratory judgment that the RRF's race-based and gender-based priority period violated their constitutional rights, that their RRF applications "must be considered as of the dates they were received by the SBA, without reference to the aforesaid unconstitutional preferences," and that if their applications were "determined to be acceptable as of the dates they were received, the applications must be granted and funded by Defendants[.]"  *See MC Mgmt. of Rochester LLC v. Biden*, No. 6:22-6337, 2023 WL 4194771, at *3 (W.D.N.Y. June 27, 2023).  Although plaintiffs do not assert a constitutional violation here, in essence they seek to have this Court declare that SBA's administration of the RRF program violated section 5003 of ARPA and that their applications must be granted and funded because they were amongst the earliest applicants.

*United States*, 856 F.3d 953, 964 (Fed. Cir. 2017).

The cases that plaintiffs cite do not support their theory that a request for money always ensures a live controversy.  *See* Pls. Opp'n at 15, 15 n.11.  This is not a situation where a practical recovery against an impoverished, bankrupt, or absent defendant may be "uncertain or even unlikely[,]" *see Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019), but one in which it is "impossible" for the Court to grant any effective relief.  Congress appropriated $28.6 billion for the RRF.  15 U.S.C. § 9009c(b)(2)(A).  That money is no longer available for RRF awards.  Plaintiffs cannot create additional Congressional appropriations out of thin air.  And plaintiffs' assertions that some additional funding could become available in the future under certain conditions are only speculative and do not provide a basis for standing.  *See Kingsley Rests., Inc. v. United States Small Bus. Admin.*, No. 1:21-2314, 2021 WL 8441778, at *3 (N.D. Ga. Aug. 24, 2021) (unreported).

B.    **Plaintiffs' Redressability Arguments Incorrectly Assume That Section 5003 Of ARPA Is Money-Mandating And That They Are Entitled To Grants**

Plaintiffs next argue that the availability of funding is not a standing problem, but instead a merits issue.  Pls. Opp'n at 16.  Plaintiffs are generally correct that when a statute is money-mandating, the failure to appropriate funds does not eliminate the Government's payment obligation.[4]  *See Me. Cmty. Health Options v. United States,* 140 S. Ct. 1308, 1320-25 (2020).

---

[4]  We do not concede that if the Court holds that section 5003 of ARPA is money-mandating, the Government would be required to pay plaintiffs.  Congress stated that "[i]n addition to amounts otherwise available, there is appropriated to the [RRF] for fiscal year 2021, out of any money in the Treasury not otherwise appropriated, $28,600,000,000, to remain available until expended."  15 U.S.C. § 9009c(b)(2)(A).  This case is different from *Maine Community Health*, in which Congress created an unlimited money-mandating obligation but then prohibited subsequent appropriations from being used for the Risk Corridors program.  *See* 140 S. Ct. 1308, 1317 (2020).  Plaintiffs appear to agree that the $28.6 billion is a cap, although they also suggest that the words "amounts otherwise available" would allow SBA to reprogram unrestricted funds or use funding appropriated for the administration of the RRF program.  Pls. Opp'n at 20 n.16.

However, plaintiffs ignore a fundamental distinction – we dispute, and the Court has not held, that section 5003 of ARPA is money-mandating.  Thus, plaintiffs put the cart far before the horse in their repeated assertions that their claims are "within the scope of the underlying legal obligation created by the money-mandating statute."  *See* Pls. Opp'n at 3, 12, 13, 16, 19, 20. Plaintiffs cannot simply declare that they are entitled to money from the Government.

Plaintiffs' lengthy discussion of *Greenlee County, Arizona v. United States*, 487 F.3d 871 (Fed. Cir. 2007) and *Indiana Municipal Power Agency v. United States*, 154 Fed. Cl. 752 (2021) also misses the mark.  As a preliminary matter, neither case addressed standing because neither involved appropriated funds becoming inaccessible.  Rather, these cases addressed the permissibility of the Government *reducing* payments pursuant to confirmed money-mandating statutes, which is not at all the scenario here.

*Greenlee County* involved a local government entity alleging that it had been paid less than it was due from the Federal Government pursuant to the Payment in Lieu of Taxes Act (PILT).  *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 873, 877 (Fed. Cir. 2007). Contrary to plaintiffs' suggestion, the Federal Circuit did not simply affirm jurisdiction based on mere allegations that the statute was money-mandating.  *See* Pls. Opp'n at 17.  Instead, the Court analyzed the key language of the statute ("the Secretary of the Interior shall make a payment for each fiscal year . . .") and determined that it was "reasonably amenable" to a reading that it mandated payment.  *See Greenlee Cnty*, 487 F.3d at 876-77 (discussing *White Mountain Apache*

---

Plaintiffs provide nothing, beyond their own speculation, to demonstrate that these potential alternative sources are in fact "available" and were intended by Congress to be used in this manner.  Plaintiffs, in an undeveloped fashion, also suggest that the Judgment Fund is available. *Id.* at 20.  The Judgment Fund cannot be used to create an appropriation and circumvent Congressional intent to limit the Government's liability.  *See State of S. Carolina v. United States*, 144 Fed. Cl. 277, 279 (2019).

*Tribe v. United States*, 249 F.3d 1364, 1383 (Fed. Cir. 2001)).

The Court held, as a straightforward matter of statutory interpretation, that the county failed to state a claim because the statute stated that payment amounts were "available only as provided in appropriations laws." *Greenlee Cnty*, 478 F.3d at 877-79. This language limited the Government's liability only to amounts appropriated by Congress. *Id.* The Government thus did not underpay the county. Contrary to plaintiffs' incorrect reading, the county had an entitlement to receive PILT payments, but it failed to state a claim for any violation of that statutory obligation because it was paid the legally correct amount. *See id.* at 877, 880.

Plaintiffs' reliance on *Indiana Municipal* is similarly misplaced. As this Court is well-aware, that case involved section 1531 of the American Recovery and Reinvestment Act of 2009 (ARRA), which created Direct Payment Build America Bonds and entitled bond issuers to a tax refund by the Government of 35 percent of the bond interest. *Ind. Mun. Power Agency v. United States*, 154 Fed. Cl. 752, 755 (2021), *aff'd* 59 F.4th 1382, 1383 (Fed. Cir. 2023). The case did not involve a challenge to standing or mootness because the source of funding for the program remained available to make payments. The Government also did not challenge that section 1531 of ARRA was money-mandating and thus it is not surprising that the Court ruled on the merits. *See id.* at 758.

Contrary to plaintiffs' analysis, *Indiana Municipal* did not turn on the timing of the submission of tax refund forms by the bond issuers.[5] *See* Pls. Opp'n at 18, 18 n.14. Instead, the

---

[5] Plaintiffs seize on a portion of the decision discussing the argument of the bond issuers that the payments were exempt from sequestration as an "obligated balance" pursuant to the Government Accountability Office definition of this budget concept. *See id.* at 763-64. It is unclear why plaintiffs give the bond issuers' mistaken argument such significance because it had no relevance to jurisdiction or to the lack of a challenge to redressability. The Government did not "concede" anything in *Indiana Municipal* that could assist plaintiffs here. *See* Pls. Opp'n at 18 n.14, 19. Plaintiffs cannot simply declare that the Government incurred a legal obligation to

Court held that 31 U.S.C. § 1324, the indefinite, permanent appropriation for the payment of tax refunds, which was the funding mechanism for paying bond issuers, was direct spending subject to sequestration. *Ind. Mun. Power Agency*, 154 Fed. Cl. at 759-63. Although the bond issuers, contrary to plaintiffs' description, were entitled to bond interest payments in general, Congress modified and reduced the payment amount set forth in section 1531 of ARRA through sequestration. *Id.* at 765-66. Thus, the bond issuers failed to state a claim that the Government had violated a statutory duty to pay at a 35 percent rate. This holding simply does not bear on the instant case; plaintiffs' reliance on *Greenlee County* and *Indiana Municipal* is puzzling.

### C.    The Expiration Of The Covered Period Moots Plaintiffs' Claims

As we explained in our motion, section 5003 of ARPA required that all RRF awards be "use[d]" during the statutory "covered period," which began on February 15, 2020 and ended on March 11, 2023. 15 U.S.C. § 9009c(a)(3); 15 U.S.C. § 9009c(c)(5). In terms of returning funds, the statute clearly states that if an eligible entity that received a grant "fails to *use* all grant funds . . . the eligible entity shall return to the Treasury any funds that the eligible entity did not *use* . . . ." 15 U.S.C. § 9009c(c)(6) (emphasis added). Plaintiffs ignore this language and argue that they *incurred* allowable expenses before or during the covered period. *See* Pls. Opp'n at 20-22.

Contrary to plaintiffs' assertion, we do not contend that RRF grant money could only be used to pay expenses incurred after the grant award. *See* Pls. Opp'n at 21. We agree that section 5003 of ARPA allowed awardees to pay allowable expenses incurred as early as February 15, 2020. We only point out the obvious practical impediment that even if plaintiffs were somehow awarded grants, there is no way for plaintiffs to now *use* any grant award by March 11, 2023, as required by the statute, because that date has passed. Any money not used by March 11, 2023,

---

pay them when they submitted their RRF applications.

must be returned to the Treasury pursuant to 15 U.S.C. § 9009c(c)(6).  Therefore, their claims

became non-redressable on that date.  *Reboot Macon, LLC v. United States*, No. 5:21-221, 2023

WL 4672395, at *5 (M.D. Ga. July 20, 2023).

## II.     The Court Does Not Possess Subject-Matter Jurisdiction Because Section 5003 Of ARPA Is Not Money-Mandating

The only portion of section 5003 of ARPA raised by plaintiffs as money-mandating

states that, except as provided in the provisions creating the priority program, the SBA

Administrator "shall award grants to eligible entities in the order in which applications are

received by the Administrator."  Compl. at ¶¶ 31-35; 15 U.S.C. § 9009c(c)(1).  As we explained

in our motion, this language cannot be "fairly interpreted as mandating compensation by the

Federal Government for the damage sustained."  *Eastport S. S. Corp. v. United States*, 372 F.2d

1002, 1009 (Ct. Cl. 1967).  Instead, it only speaks to the method of application administration

and processing of award disbursements.

Plaintiffs must understand the correct meaning of this sentence at some level because

their complaint does not state a direct violation of a money-mandating statute, but instead attacks

SBA for paying too much money to applicants who applied later than them or who were

allegedly ineligible.  Plaintiffs assert that this "misallocation" constituted an arbitrary, capricious,

and negligent administration of the entire RRF program.  Plaintiffs' attempts to cast their

complaint in line with genuinely money-mandating statutes are misguided.

### A.     Plaintiffs Misread The Language Of Section 5003 Of ARPA

The cornerstone of plaintiffs' argument is that the statutory provision quoted above

contains the words "shall award grants."  *See* Pls. Opp'n at 2, 5-12.  However, plaintiffs then

simply ignore the rest of the sentence or eliminate it through ellipses.  *See id.*  This is not a valid

method of statutory interpretation.  "It is 'a cardinal principle of statutory construction' that 'a

statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001). Plaintiffs' interpretation makes superfluous the remaining language of the statutory provision by erasing it entirely.

We do not dispute that the word "shall" creates a mandatory duty to do something in general, as opposed to the word "may." *See* Pls. Opp'n at 6-8. Furthermore, we do not dispute that in the proper context, the phrase "shall award/provide a grant" would be money-mandating. But that is not actually what section 5003 of ARPA states. None of the cases that plaintiffs cite stand for the proposition that the word "shall" near the word "award," "grant," and/or "pay," is all that matters and that the rest of the statutory provision or other context should be ignored.

Plaintiffs' reliance on known money-mandating statutes only demonstrates that section 5003 of ARPA is different. For example, in *Maine Community Health*, the statute stated that the Secretary of Health and Human Services "shall provide" for payments according to a precise statutory formula, and "shall pay" insurers for losses exceeding the statutory threshold. *Me. Cmty. Health Options*, 140 S. Ct. at 1320-21. The subject of this language was payment to a particular group, *i.e.*, insurers with unprofitable plans. Similarly, the statute in *ARRA Energy* stated, "the Secretary of the Treasury shall, subject to the requirements of this section, provide a grant to each person who places in service specified energy property to reimburse such person for a portion of the expense of such property . . . ."[6] *ARRA Energy Co. I v. United States*, 97 Fed.

---

[6] Although plaintiffs suggest otherwise, we do not repeat the arguments advanced by the Government that were rejected in *ARRA Energy*. *See* Pls. Opp'n at 10. We do not assert that this Court "may never exercise jurisdiction over suits based on a statute that requires the payment of money as a grant or subsidy." *ARRA Energy Co. I v. United States*, 97 Fed. Cl. 12, 25 (2011). We also do not argue that this Court only has jurisdiction "over those claims that are based on a statute containing an express damages remedy for its violation by the government." *Id.* We rely on *Bowen v. United States* and *Katz v. Cisneros* for different reasons.

Cl. 12, 14 (2011).  Once again, this statute mandated payment to an identifiable group, namely persons who had placed specified energy property into service.  *Id.* at 19-20.

By contrast, in section 5003 of ARPA, Congress did not just state that SBA shall award a grant to any or all eligible entities or to eligible entities who applied at a certain date or time or met certain criteria.  The words "the order in which applications are received" clarify that this provision is not a command for payment but an instruction to SBA as to how to manage disbursements.  Plaintiffs' interpretation that the section 5003 identifies a group owed payment is circular.  Pls. Opp'n at 11-12.  Plaintiffs' argument impermissibly rests on their own, self-serving determination that SBA became legally obligated to them at the moment that they submitted their applications because, according to plaintiffs, SBA was required to have paid grants based on time of submission only.  *See id.*  This is not a money-mandating claim, but a disguised challenge to SBA's program administration.

**B.    Comparison To The Shuttered Venue Operators Grant Program Supports Our Argument**

Plaintiffs contend that a similar program, the Shuttered Venue Operators Grant (SVOG) program, codified at 15 U.S.C. § 9009a, demonstrates that section 5003 of ARPA contains money-mandating language.  Pls. Opp'n at 7-8.  Plaintiffs point out that the SVOG statute uses the discretionary word "may" in several key instances, which they contrast with the "shall" language in section 5003.  *Id.*  For example, the SVOG statute states, "[t]he Administrator may make initial grants to eligible persons or entities in accordance with this section []" and "[a]fter the end of the initial 28-day period during which the Administrator awards grants under this paragraph, the Administrator may award an initial grant to any eligible person or entity."  15 U.S.C. § 9009a(b)(2)(A); 9009a(b)(2)(C).

However, plaintiffs' argument only proves our point.[7]  Although the statutes are similar in structure and purpose, section 5003 of ARPA does not simply contain the language from the SVOG statute with the word "shall" transposed in the place of "may."  Section 5003 does not contain provisions that state outright, without additional language that plaintiffs ignore, that SBA "shall make grants to eligible persons or entities" or that SBA "shall award a grant to any eligible person or entity" after a certain time period.  *See generally* 15 U.S.C. § 9009c.  Plaintiffs cannot analogize to the discretionary SVOG program to demonstrate that the RRF program is money-mandating because the language that they rely upon is not otherwise identical across statues.[8]

### III.    The Court Does Not Possess Subject-Matter Jurisdiction Over Claims That A Government Agency Acted Arbitrarily And Capriciously

Our motion explained that plaintiffs' allegations fundamentally present a claim pursuant to the Administrative Procedures Act (APA).  The crux of plaintiffs' complaint is that SBA managed the RRF program in various arbitrary and capricious ways and that these acts and

---

[7]  *Harlem Globetrotters International, Inc.* also does not assist plaintiffs.  *See* Pls. Opp'n at 7-8, 8 n.4.  The *Harlem Globetrotters* plaintiff similarly alleged in the first count of its complaint that SBA acted "arbitrarily and capriciously in refusing to disburse the Shuttered Venue Operators Grant funds" but, unlike the instant case, also included a second count alleging that this refusal constituted a breach of contract.  *Harlem Globetrotters Int'l, Inc. v. United States*, 168 Fed. Cl. 31, 34 (2023).  The Court determined, based on the plaintiff's description of its theories, that this first count was duplicative of the breach of contract count, which failed to state a claim.  *Id.* at 34.  But to the extent that the first count "effectively claims that the SBA acted in an arbitrary and capricious manner," it was "best seen as being brought under the [Administrative Procedures Act] and is therefore beyond the jurisdiction of the Court of Federal Claims."  *Id.*  The same logic should apply here.

[8]  Plaintiffs reference our reply in support of our motion to dismiss in *Adia Holdings, Inc. v. United States*, No. 23-623.  Pls. Opp'n at 8 n.4.  That case also involved the RRF program and a breach of contract theory.  To the extent that plaintiffs suggest that we endorsed or admitted in *Adia* that section 5003 is money-mandating, this is particularly incorrect.  In the portion of our reply that plaintiffs cite, we rejected any money-mandating theory and stated specifically that "[t]he language in Section 5003 does not mandate payment, but instead empowers the Small Business Administration to award grants in general and creates the application process."  *Adia Holdings, Inc. v. United States*, No. 23-623, ECF No. 11 at 7.

10

omissions prevented them from receiving funding by allowing the money to be distributed to other applicants.  *See* Compl. at ¶¶ 7, 9, 75, 83, 128, 135, 142-153.  Section 706 of the APA empowers courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A).  This Court does not possess subject-matter jurisdiction over such claims. *See, e.g.*, *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003).

### A.    Plaintiffs Fundamentally Misunderstand Tucker Act Jurisdiction

In their opposition, plaintiffs essentially argue that this Court has the same jurisdiction as a district court.  They assert that the Court "may resolve disputes regarding SBA's interpretation of and compliance with [F]ederal law" and suggest that this Court and the district courts "share the power to adjudicate overlapping issues."  Pls. Opp'n at 27-29.  Plaintiffs argue that this Court may, under the Tucker Act, engage in judicial review of SBA's decisions in administering the RRF program and resolve disputes "over whether an agency violated the law in administering a grant program," even if those decisions are characterized as arbitrary, capricious, negligent or "whatever."  *See id.* at 3, 29.

Plaintiffs drastically misunderstand this Court's jurisdiction.  Plaintiffs generally invoke the Tucker Act, but do not cite any authority for the idea that the Tucker Act itself permits the Court to review the lawfulness of agency actions.  *See* Pls. Opp'n at 27, 30.  Indeed, the Tucker Act does not waive sovereign immunity with respect to "any claim invoking a constitutional provision or a federal statute or regulation" or for any claim of a violation of a "substantive right."  *See United States v. Testan,* 424 U.S. 392, 400, 402 (1976).  The Tucker Act is "merely jurisdictional" and a plaintiff's entitlement to money damages depends upon the existence of a separate, money-mandating statute.  *Id.*  The Tucker Act does not permit the Court to address

11

just any statutory violation.

Plaintiffs also misunderstand the scope of statutory interpretation to be performed by the Court. Of course, the Court is not required to accept an agency's own interpretation of statutes and regulations. *See* Pls. Opp'n at 30. At the outset of the case, the Court, either in response to a motion or on its own initiative, shall determine whether the statute (or Constitutional provision or regulation) raised in the complaint is money-mandating.[9] *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005). The Court therefore must interpret whether the statutory text can be fairly interpreted as mandating compensation by the Government. *See Eastport S. S. Corp.*, 372 F.2d at 1009. Then, if the Court determines that a statute is money-mandating, the Court "has the power to make a determination of liability that will give rise to a remedy of monetary relief by finding . . . that an agency has misinterpreted its statutory mandate to pay out monies." *Kanemoto v. Reno*, 41 F.3d 641, 647 (Fed. Cir. 1994) (citing *Mitchell v. United States*, 930 F.2d 893, 895-97) (Fed. Cir. 1991)).

Here there is no statutory mandate to pay out money, meaning that plaintiffs fail at the jurisdictional level. However, even if the statute was money-mandating, the Court is limited in its statutory interpretation to determining liability, namely whether the agency has misinterpreted its statutory mandate "to pay out monies." *See id.* Plaintiffs' complaint ranges beyond such a question and contains a wide range of allegations, from failure to detect fraud to mismanagement of the online portal.

---

[9] *Fisher* also eliminates plaintiffs' suggestion that we should have moved to dismiss pursuant to Rule 12(b)(6) or that their allegations that "they are eligible applications within the class of RRF application to whom SBA was obligated" must be taken as true. *See* Pls. Opp'n at 5, 14. Plaintiffs' allegations that any obligation existed are legal conclusions. The Court must determine whether a statute is money-mandating and does not just accept a plaintiff's allegations of the Court's jurisdiction. *See Fisher v. United States*, 402 F.3d 1167, 1172-73 (Fed. Cir. 2005).

Plaintiffs do not connect these allegations to the misinterpretation of a statutory payment mandate or a related erroneous decision by a Government official that directly caused each of them not to receive grants.  Instead, they seek a determination that they deserve payment because SBA's alleged improper administration caused SBA to "misallocate" funds.  There is no basis in the law for plaintiffs' suggestion that the Court can also review various ancillary, non-monetary, administrative matters, most of which are not even connected to the text of the statute, as "part and parcel" of its power to adjudicate money claims.[10]  *See* Pls. Opp'n at 28.

 Plaintiffs also confuse that this Court uses the APA arbitrary and capricious *standard* when reviewing an agency's action under a money-mandating statute (or in a bid protest) with the Court having overlapping APA jurisdiction with the district courts.  *See id.* at 29.  This distinction is explained in the case that plaintiffs themselves cite, *BP Exploration & Production, Inc. v. United States*.  There, the Court held that the Federal Oil and Gas Royalty Management Act of 1982 did not create a remedial scheme that displaced the Tucker Act.  *BP Expl. & Prod., Inc. v. United States*, 142 Fed. Cl. 579, 592-93 (2019).  The Court rejected the Government's argument that a provision in the statute affording judicial review of a final agency decision on oil and gas royalty refunds "in accordance with Title 5" routed review to a district court under APA

---

[10]  We included a footnote in our motion to dismiss stating that we do not agree with plaintiffs' underlying premise that paying on applications in approval order was contrary to statute or arbitrary and capricious.  *See* Def. Mot. at 13 n.5.  In response, plaintiffs provide five pages of exegesis.  *See* Pls. Opp'n at 22.  However, when an application was "received" is irrelevant to both jurisdiction and merits in this Court.  Section 5003 of ARPA does not mandate payment to eligible entities if their applications were "received" at a certain time, so the determination of when an application was "received" does not relate to money damages.  Plaintiffs' reliance on *Chef Time 1520 LLC v. SBA* is misplaced because the plaintiffs in that case did what plaintiffs have not done here – file in district court while there was still RRF funding available for new awards and seek a determination under the APA that SBA's failure to maintain their places in the queue and not disburse their grants was arbitrary and capricious and contrary to 15 U.S.C. § 9009c(c)(1).  *See* 646 F. Supp. 3d 101, 111 (D.D.C. 2022).

jurisdiction.  *Id.* at 589, 592-93.

The *BP* Court applied "existing jurisdictional principles" and held that Tucker Act jurisdiction encompassed BP's claim because it was for money damages against the Government pursuant to a money-mandating statute.  *Id.* at 592-93.  The Court would then apply the APA's standard of review, instead of a *de novo* standard, to the agency's royalty refund decision, in line with the Court's review of agency procurement decisions and military correction board decisions.  *Id.* at 593.  The Court specifically explained that it was *not* exercising jurisdiction "over claims arising under the APA" but was exercising Tucker Act jurisdiction.  *Id.*

Plaintiffs' reliance on *Housing Authority of Slidell* and other breach of contract cases is misplaced.  *See* Pls. Opp'n at 27-29.  There, the plaintiff claimed that the agency acted arbitrarily and capriciously in rejecting requests to release funding and in imposing onerous financial requirements, and that these acts constituted a breach of contract.  *Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 622 (2020).  The Court rejected the Government's argument that the breach of contract claim was actually an APA claim for specific performance.  *Id.* at 623-24.  The Court held that the plaintiff had pled "unequivocal claims for money damages arising from a breach of contract and the implied duty of good faith and fair dealing."  *Id.* at 624, 626.

However, that case has no application here.[11]  Plaintiffs do not invoke the Tucker Act's

---

[11]  *Slattery v. United States* does not assist plaintiffs.  *See* Pls. Opp'n at 3.  In that case, the Government argued that the Court "does not have jurisdiction of breach of contract claims when the federal entity that incurred the breach does not receive appropriated funds."  *Slattery v. United States*, 635 F.3d 1298, 1300 (Fed. Cir. 2011).  The quote selected by plaintiffs relates to the Court's holding that a statute authorizing the Federal Deposit Insurance Corporation to "sue and be sued" generally did not withdraw Tucker Act jurisdiction or require suit in district court. *See id.* at 1314-15.  *Slattery* does not speak to any of the issues at stake here.  *Silver State Land LLC v. United States* is also inapposite and did not address jurisdiction or the interplay between the Tucker Act and the APA at all.  *See* Pls. Opp'n at 29 n.24.  Instead, the Court rejected the Government's argument on the merits that prior APA litigation barred the breach of contract claim under the doctrine of issue preclusion.  *See Silver State Land LLC v. United States*, 148

waiver of sovereign immunity for claims founded upon an express or implied contract with the United States.[12]  *See* 28 U.S.C. § 1491(a)(1).  We are not attempting to recharacterize a claim for contract damages as an APA claim.  Rather, we are analyzing plaintiffs' own allegations of arbitrary and capricious actions by SBA given binding Tucker Act jurisprudence and the lack of any money-mandating language in section 5003 of ARPA.

Indeed, plaintiffs identify no support for the idea that this Court can generally review an agency's non-monetary, administrative actions for compliance with Federal law.[13]  It is well-established that the APA waives sovereign immunity only for an action seeking relief "other than money damages," whereas the Tucker Act waives sovereign immunity for actions for money damages.  *See Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997). These are non-overlapping spheres and, as we discuss in the next section, the payments plaintiffs seek are not actually "money damages."

---

Fed. Cl. 217, 223, 257 (2020).

[12]  We also do not argue, as in *Housing Authority of Slidell*, that a reference to arbitrary and capricious conduct in a complaint can turn clear breach of contract allegations into an APA claim.  *See Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 637 (2020).  Plaintiffs are correct, Pls. Opp'n at 29, that the label a plaintiff applies to its cause of action does not determine jurisdiction.  *See Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994).  However, it is unclear why sophisticated plaintiffs would choose to characterize SBA's actions as arbitrary, capricious, and negligent, descriptions plainly connected to APA claims and torts, if they meant something else entirely.  The simplest explanation is that, despite artful pleading, plaintiffs could not manage to shoehorn their claims into the Tucker Act's money-mandating statute or breach of contract waivers of sovereign immunity.

[13]  None of the cases cited by plaintiffs, *see* Pls. Opp'n at 29 n.25, state that this Court may determine if an agency acted arbitrarily and capriciously in the absence of a violation of a money-mandating statute, a breach of contract, or a bid protest.

**B.**    **Claiming Money As Damages Does Not Create Tucker Act Jurisdiction**

As we explained in our motion, simply claiming a payment of money as a remedy for various agency wrongs does not move an APA case into the jurisdiction of this Court.  We relied on *Bowen v. Massachusetts*, 487 U.S. 879 (1988) and *Katz v. Cisneros*, 16 F.3d 1204 (Fed. Cir. 1994).  Plaintiffs attempt to distinguish these cases but ignore that they seek the same kind of relief found to be within the district courts' APA jurisdiction in both cases.

Plaintiffs assert that the Federal Circuit found Tucker Act jurisdiction lacking in *Katz* "because there was no money-mandating source of law alleged by the plaintiff, not because the plaintiff challenged the agency's interpretation of federal regulations." Pls. Opp'n at 30.  This is incorrect.  *Katz* did not turn on the existence of a money-mandating statute, which, in any event, is lacking here as well.  Instead, the Government asserted that the claims of the plaintiff, Hollywood Associates, were contractual in nature and thus should be heard in the Court of Federal Claims.  *See Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994).  However, the Federal Circuit disagreed and explained that the matter belonged in district court under the APA because, as relevant here, Hollywood Associates "*challenged [the agency's] interpretation of the regulations governing the calculation of contract rents.*"  *Id.* at 1206 (emphasis added).

Contrary to plaintiffs' contentions, Pls. Opp'n at 31, Hollywood Associates sought "judicial interpretation of a federal regulation."  *Katz*, 16 F.3d at 1209.  Although Hollywood Associates sought money, which would typically suggest Tucker Act jurisdiction and prevent a case from being heard under the APA because the APA only waives sovereign immunity for claims seeking relief "other than money damages," the Federal Circuit held that the relief sought was not "money damages."  *Id.* at 1208.  The Federal Circuit stated that Hollywood Associates "seeks payments to which it alleges it is entitled pursuant to federal statute and regulations; it

does not seek money as compensation for a loss suffered." *Id.* at 1208.  "That a payment of money may flow from a decision that [the agency] has erroneously interpreted or applied its regulation does not change the nature of the case." *Id.* at 1208.  The Federal Circuit concluded that "no relief is available in the Court of Federal Claims here because the case challenges the interpretation of law which controls payment to Hollywood Associates." *Id.*

The Court does not possess jurisdiction in the instant case for the same reasons.  Plaintiffs similarly assert that SBA did not follow a "statutory mandate" in section 5003 of ARPA to award grants in the order in which applications were received.  *See* Compl. at ¶¶ 3, 5, 8, 9, 34. According to plaintiffs, if the Court determines that SBA did not comply with "statutory requirements and its own regulations," the Court would then decide "which additional applications should have been awarded grants had SBA not made erroneous disbursements to applicants in violation of the statutory mandate."  Pls. Opp'n at 28.  This request is plainly seeking the payment of money that would result from a holding that SBA misinterpreted section 5003 of ARPA and should have awarded grants in a different order.  Regardless of plaintiffs' claim for so-called money damages or use of Tucker Act language, they challenge SBA's interpretation of a law that controls payment to entities like plaintiffs.  *Katz* is dispositive.

Plaintiffs' discussion of *Bowen* is similarly erroneous.  Although plaintiffs explain why the Supreme Court in *Maine Community Health* found *Bowen* to be distinguishable and not a barrier to determining that the Court of Federal Claims possessed jurisdiction, plaintiffs are not in the same position and do not seek the same relief as the insurance companies in *Maine Community Health.*  See Pls. Opp'n at 32-34.  *Maine Community Health* did not limit *Bowen* to its facts or overrule it in any way.  *See id.* at 32.  Plaintiffs point to several specific reasons why they believe that *Bowen* does not prevent the Court from taking jurisdiction.  However, these are

all unfounded.

First, contrary to their representations, plaintiffs here do not actually seek "money damages for past injuries . . . ." *See* Pls' Opp'n at 33. Plaintiffs' facial characterization of their claims as money damages in their prayer for relief is of no legal import. The essence of plaintiffs' allegations is that they did not receive a grant award from the Government while others, who applied later or had defective applications, obtained grant awards. Thus, plaintiffs seek a determination that SBA awarded grants using an incorrect statutory or regulatory interpretation. *See* Compl. at ¶¶ 9-10. As noted above, any payment of money would result from a judicial determination that SBA erred in its interpretations and should have awarded grants to plaintiffs based on their place in a now-corrected queue. Plaintiffs do not, therefore, seek "money damages" to compensate for their past injuries or labors.

Second, the fact that *Bowen* addressed a "rather complex ongoing relationship" between a State and the Federal Government does not make it inapposite. Although there is currently no ongoing relationship between plaintiffs and SBA, the key point here is that plaintiffs seek to create one prospectively.[14] Again, in plaintiffs' own words, they request that the Court determine "what additional applications should have been awarded grants had SBA not made erroneous disbursements to applicants in violation of a statutory mandate." Pls. Opp'n at 28. This case is thus "not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Bowen v. Massachusetts*, 487 U.S. 879, 900 (1988). Here, the alleged statutory mandate is to award grants

---

[14] Plaintiffs' acknowledgement that the RRF program ended and that the statutory covered period expired over a year ago appears to be at odds with their standing argument. *See* Pls. Opp'n at 33-35.

in the order in which applications were received.

Third, plaintiffs note that in *Maine Community Health*, the statute employed a backwards-looking formula designed to "compensate insurers for losses incurred in providing healthcare coverage for the prior year." *Me. Cmty. Health Options*, 140 S. Ct. at 1329. Plaintiffs argue that the RRF statute was also meant to compensate restaurants for financial losses incurred in the first year of the pandemic. Pls. Opp'n at 34. However, the purpose of the statute is not the relevant point of comparison but instead what relief plaintiffs seek.

Here, although called "money damages," plaintiffs seek to clarify SBA's obligation to them by obtaining a decision that SBA acted arbitrarily and capriciously and failed to follow statutory directives. *See* Compl. at ¶¶ 142, 143, 149-153. As in *Bowen*, any payment made by the Government would be "a mere by-product of [the district court's] primary function of reviewing the Secretary's interpretation of federal law." *Bowen*, 487 U.S. at 910. This is different relief than that sought by the insurers in *Maine Community Health*, who sought the payment of money that the statute stated was owed and due but had not been paid. *See Me. Cmty. Health Options*, 140 S. Ct. at 1317-18. Plaintiffs' attempt to distinguish *Bowen* fails.

**IV.**    **The Court Does Not Possess Subject-Matter Jurisdiction Over Negligence Claims**

We explained in our motion to dismiss that it is well-established and non-controversial that this Court does not possess jurisdiction to entertain negligence claims. The Federal Circuit has recognized that "[t]he plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008); 28 U.S.C. § 1491(a). Plaintiffs only suggest that it does not matter how they characterized SBA's actions. *See* Pls. Opp'n at 29. To the contrary, if plaintiffs' claims sound in tort, this Court does not possess jurisdiction.

19

## V.    <u>Transfer To A District Court Would Be Futile</u>

Plaintiffs fail to address our point that transfer to a district court would be futile here. When the Court lacks jurisdiction over a case, it is to transfer the case to a different court where the lawsuit could have been brought if it is "in the interest of justice" to do so.  28 U.S.C. § 1631. However, although the complaint makes allegations that should be considered APA claims under district court jurisdiction, "a case should not be transferred or retransferred to a [d]istrict [c]ourt if it most probably would be a futile act."  *Little River Lumber Co. v. United States*, 7 Cl. Ct. 492, 494 (1985) (citing *Dancy v. United States*, 229 Ct. Cl. 300, 308 (1982)).  As we explained in our motion, transfer would be futile here because plaintiffs lack standing or the case is moot.

## <u>CONCLUSION</u>

For these reasons, as well as those set forth in our motion to dismiss, we respectfully request that the Court dismiss the complaint for lack of subject-matter jurisdiction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ William J. Grimaldi</u>
WILLIAM J. GRIMALDI
Assistant Director

<u>/s/ Rebecca S. Kruser</u>
REBECCA S. KRUSER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 305-2035

rebecca.s.kruser@usdoj.gov

April 22, 2024                               Attorneys for Defendant