No. 23-1876C
(Judge Richard Hertling)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

112 GENESEE STREET LLC, et. al.,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING QUESTIONS RAISED BY THE COURT ON MAY 22, 2024

Robel Yared
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
202-434-5000
*Of Counsel*

F. Greg Bowman
Edward Reddington
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
202-434-5000
fbowman@wc.com
*Attorneys for Plaintiffs*

June 5, 2024

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

QUESTIONS PRESENTED ........................................................................................... v

ARGUMENT .................................................................................................................. 1

I.   Question 1: § 9009c(b)(2)(A) does *not* impose a statutory cap on liability to the Plaintiffs. ..................................................................................................................2

II.  Question 2: Even if § 9009c imposed a statutory cap on liability, the Plaintiffs state a claim upon which relief can be granted. ................................................................4

   A.   The obligation to Plaintiffs arose when their applications were received. ..............5

   B.   Erroneous payments do not foreclose Plaintiffs' claims. ........................................7

   C.   The FRA rescinds only *unobligated* funds. ...........................................................9

   D.   Section 9009c(c)(6) does not foreclose Plaintiffs' claims. ....................................10

## TABLE OF AUTHORITIES

Cases

*Greenlee Cnty., v. United States*,
   487 F.3d 871 (Fed. Cir. 2007) ................................................................................. passim

*Maine Cmty. Health Options v. United States*,
   140 S. Ct. 1308 (2020) ................................................................................... 1, 2, 4, 5, 7

*Molina Healthcare of Cal., Inc. v. United States*,
   133 Fed. Cl. 14 (2017) ................................................................................................. 2

*Salazar v. Ramah Navajo Chapter*,
   567 U.S. 182 (2012) ..................................................................................................... 4

*Samish Indian Nation v. United States*,
   657 F.3d 1330 (Fed. Cir. 2011), *rehrg. and rehrg. en banc denied*,
   *vacated as moot*, 568 U.S. 936 (2012) ........................................................ 2, 3, 4, 7, 10

*Star-Glo Assocs., LP v. United States*,
   414 F.3d 1349 (Fed. Cir. 2005) ................................................................................ 3, 6

*State of S. Carolina v. United States*,
   144 Fed. Cl. 277 (2019) ........................................................................................... 6, 7

*Sutton v. United States*,
   256 U.S. 575 (1921) ................................................................................................. 7, 8

Statutes

Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(A) ........................................................... 3, 7

Fiscal Responsibility Act of 2023 (June 3, 2023),
Pub. L. 118-5, Div. B, Title I, Section 52, 137 Stat. 28 ............................................. 2, 9, 10

15 U.S.C. § 9009c ............................................................................................................ 1, 4, 5

15 U.S.C. § 9009c(b)(2)(A) ................................................................................................ 2, 9

15 U.S.C. § 9009c(c)(6) .................................................................................................... 5, 10

Purpose Statute, 31 U.S.C. § 1301(a) ..................................................................................... 8

Judgment Fund, 31 U.S.C. § 1304 ................................................................................1, 2, 3, 8, 10

31 U.S.C. § 1502(b) ........................................................................................................................9

31 U.S.C. § 1551(a)(1).....................................................................................................................9

31 U.S.C. § 1552(a) .........................................................................................................................3

31 U.S.C. § 1553(a) ....................................................................................................................9, 10

31 U.S.C. § 1555......................................................................................................................3, 9, 10


Other Authorities

Congressional Budget Office, *CBO Explains How It Estimates Savings From Rescissions*,
May 23, 2023, https://www.cbo.gov/system/files/2023-05/58915-Rescissions.pdf .......................9

Congressional Research Service, Expiration and Cancellation of Unobligated Funds,
February 26, 2024, https://crsreports.congress.gov/product/pdf/IF/IF12329/3 ..............................9

Department of Justice, Office of Legal Counsel, Application of the Miscellaenous
Receipts Act to the Settlement of False Claims Act Suits Concerning Contracts With the
General Services Administration, January 10, 2006,
https://www.justice.gov/opinion/file/786171/dl ............................................................................10

Department of Justice Press Release, Former Montgomery County Restaurant Owner
Charged with PPP and RRF Loan Fraud, May 17, 2024, https://www.justice.gov/usao-
edpa/pr/former-montgomery-county-restaurant-owner-charged-ppp-and-rrf-loan-fraud .............10

Government Accountability Office:

    Comptroller General Decision B-265901, Oct. 14, 1997 .......................................................10

    Comptroller General Decision B-302366, July 12, 2004 .......................................................10

    Comptroller General Decision B-310725, May 20, 2008 ......................................................10

    *Principles of Federal Appropriations Law,*
    *Chapter 6, Availability of Appropriations: Amount* (3d ed. 2006).........................................10

    *Principles of Federal Appropriations Law,*
    *Chapter 7, Obligation of Appropriations* (3d ed. 2006) ......................................................5, 7

*Principles of Federal Appropriations Law,*
*Chapter 9, Liability and Relief of Accountable Officers* (3d ed. 2006) ................................10

*Principles of Federal Appropriations Law,*
*Chapter 10, Federal Assistance: Grants and Cooperative Agreements* (3d ed. 2006) ...........10

*Principles of Federal Appropriations Law,*
*Chapter 14, Claims against and by the Government* (3d ed. 2008) .........................................8

Letter from Anthony H. Gamboa, General Counsel, GAO, to Christopher Bond,
Chairman, and Barbara Mikulski, United States Senate (April 9, 2003), B-300480
https://www.gao.gov/assets/b-300480.pdf................................................................................7

Steven N. Tomanelli, Appropriations Law: Principles and Practice (2003)...................................5

U.S. Cert. Pet., *United States v. Samish Indian Nation*,
    2012 WL1961403, No. 11-1448 (June 1, 2012) ………………………………….  3, 4

## QUESTIONS PRESENTED

1 – Does 15 U.S.C. § 9009c(b)(2)(A) impose a statutory cap on the amount of money to be spent under the Restaurant Revitalization Fund, or does § 9009c create an uncapped liability to support an award to the plaintiffs, either directly or through the Judgment Fund?

2 – Presuming that § 9009c caps liability and that § 9009c(c)(1) required the SBA to award grants strictly in the order in which applications were received, does the exhaustion of the available funds through the award of grants to entities who submitted their applications after the plaintiffs foreclose the plaintiffs from stating a claim for relief? What effect does the Fiscal Responsibility Act's de-obligation provision and § 9009c(c)(6)'s requirement that unspent funds be returned to the Treasury have on this question?

**ARGUMENT**

The Supreme Court in *Maine Community Health* stressed that its holdings "reflect a principle as old as the Nation itself: The Government should honor its obligations." 141 S. Ct. 1308, 1331 (2020).  Pursuant to fundamental tenets of appropriations law implementing that bedrock principle, Plaintiffs here have stated a claim.

In § 9009c Congress mandated that the SBA award grants to a particular group of applicants and appropriated a fixed sum for that purpose.  Congress did not confine its mandate to the "availability of appropriations"—language that has been said to "limit liability."  Congress instead directed SBA to award grants in the order applications were received, thus identifying applicants to whom the statutory obligation would run, and to whom it would not.  Plaintiffs' claims therefore *effectuate* Congressional intent rather than *contravene* it.  In fact, when presented a similar situation, the Federal Circuit unanimously held that a fixed appropriation did not cap the Government's liability to the plaintiffs, and the Judgment Fund could satisfy any damages award.  That Federal Circuit decision was voluntarily dismissed by plaintiffs and then vacated as moot, but it remains persuasive.

Even if § 9009c capped liability (as in *Greenlee County*), that would not change the outcome.  Erroneous disbursements do not extinguish the Government's liability to a claimant it is obligated to pay, even if the appropriation has been depleted. Disbursements made by the SBA to ineligible applicants or later applicants (i.e., those whose applications were received outside of the first $28.6 billion in applications) were contrary to Congress's statutory mandate, and, therefore, could not extinguish the statutory obligation to Plaintiffs or foreclose their claims.

The Fiscal Responsibility Act ("FRA") does not affect the viability of Plaintiffs' claims because money was previously *obligated* to Plaintiffs by *operation of law* when Plaintiffs' applications were received, and the FRA requires only *unobligated* funds to be returned to the Treasury. Because SBA erroneously disbursed funds (that were obligated to Plaintiffs) to entities to whom it was neither obligated nor authorized to pay, the agency has a legal duty to recover those disbursements. Any such returned funds (previously obligated to Plaintiffs) would be available to satisfy Plaintiffs' claims. And even if they are not because the RRF account is (or becomes) legally unavailable—as SBA has argued—the Judgment Fund would be available.

## I.  Question 1:  § 9009c(b)(2)(A) does *not* impose a statutory cap on liability to the Plaintiffs.

Section 9009c(b)(2)(A) does *not* impose a statutory cap on liability as that term is used in *Maine Community Health* and *Greenlee County* because Congress did not make the obligation to pay "subject to available appropriations," or the equivalent. In fact, Congress unambiguously did the opposite by stating that the appropriation was "in addition to amounts otherwise available," and therefore it would be "inappropriate to rely upon legislative history to establish the existence of a statutory cap that is not contained in the text of the statute itself." *Molina Healthcare of Cal. v. United States*, 133 Fed. Cl. 14, 39-40 (2017) (cleaned up). While not imposing a liability cap, the appropriation of a fixed sum did narrow the group of entities SBA was obligated to pay (based on the order applications were received). Pls.' Opp'n 13-14. The fixed appropriation did not limit liability for amounts the agency was obligated to pay. In this regard, this case is like *Samish Indian Nation* in which the Federal Circuit unanimously rejected the argument that a liability cap defeated plaintiff's claims. 657 F.3d 1330, 1339-41 (Fed. Cir. 2011), *reh'g and reh'g en banc denied*, *vacated as moot*, 568 U.S. 936 (2012).

In *Samish*, the Federal Circuit addressed statutory grant programs with fixed appropriations. The funds had been fully disbursed and the pertinent accounts expired before suit was filed. 657 F.3d at 1335. The Government argued liability was capped because legislative history indicated the appropriation of a fixed amount was "essential" so the program's cost would be "definite and ascertainable beforehand." U.S. Cert. Pet. at 9, No. 11-1448 (June 1, 2012) ("U.S. Pet."). The Government further argued that because all funds had been expended and lapsed, the Anti-Deficiency Act ("ADA") precluded the Court from granting relief. *See* 657 F.3d at 1339-41. The Federal Circuit unanimously rejected these arguments. It held that even though the appropriations in *Samish* were fixed (as in the RRF), the Revenue Act was not "capped in a manner that restricts the government's liability for damages" because the obligation to pay was *not* subject to the limiting language of the statutes in *Star-Glo* and *Greenlee County*. *Id*. at 1340. Although agency accounts in *Samish* expired and would have closed long before the suit was filed, 31 U.S.C. §§ 1552(a), 1555, the Judgment Fund could pay money damages. 657 F.3d at 1341. The Federal Circuit noted that the ADA "does not limit the Court of Federal Claims' power to enter a judgment in damages to compensate a plaintiff for an injury on a claim brought under the Tucker Act." *Id*. at 1338. Because courts had determined the plaintiff tribe should have been federally recognized, the Government was obligated to pay the plaintiff. This obligation was owed even though the Government had exhausted the appropriation by, in effect, overpaying other participants by omitting plaintiff from the allocation scheme. In short, because the plaintiff's claims were within the statutory obligation, exhaustion and expiration of the appropriation, including by paying too much to other participants, did not foreclose the claims.

The Government petitioned the Supreme Court for a writ of *certiorari* and informed the Court that a "materially similar question" was presented in *Salazar v. Ramah Navajo Chapter*, which was pending. U.S. Cert. Pet. at 15. On June 18, 2012, the Supreme Court rejected the Government's arguments in *Ramah*. 567 U.S. 182 (2012). The Supreme Court later confirmed that the principles underpinning *Ramah* apply to statutory Tucker Act cases arising from a money-mandating statute in addition to claims sounding in contract. *Maine Cmty. Health*, 140 S. Ct. at 1319-20, 1321-22. After the *Samish* plaintiffs informed the Supreme Court of their voluntary dismissal, the Court granted certiorari and vacated the decision below as moot. The reasoning of the three Circuit judges in *Samish* remains a persuasive analysis of a situation that—like here—involved claims within a statutory obligation for which the fixed appropriation had been exhausted and expired. The Federal Circuit had no difficulty concluding that those factors neither foreclosed claims nor relieved the government of liability. This Court should reach the same conclusion.

## II.  Question 2: Even if § 9009c imposed a statutory cap on liability, the Plaintiffs state a claim upon which relief can be granted.

Plaintiffs' claims would be cognizable even if Congress had capped liability under the RRF by making the payment obligation subject to available appropriations. Pls.' Opp'n 17-20. In a capped liability fund (like in *Greenlee County*), damages claims fail if they expand a program's obligations beyond the appropriation. *Id*. at 16-17. Plaintiffs' claims here do not expand and instead are within the statutory obligation, even if it is capped. This is so because SBA's erroneous disbursement in violation of the statutory mandate did not satisfy the obligation to Plaintiffs (nor create an obligation to those erroneously paid). Whether or not SBA complies with its legal duty to recover erroneous expenditures, *id*. at 13, the purported exhaustion of the

4

RRF through erroneous payments has no legal effect on the viability of Plaintiffs' claims, *id*. at 19-20. And neither the FRA nor §9009c(c)(6) forecloses Plaintiffs' claims.

### A. The obligation to Plaintiffs arose when their applications were received.

"The timing of obligations is critical in determining whether an agency has complied with the time, purpose, and amount restrictions established by Congress for each appropriation." Steven N. Tomanelli, Appropriations Law 43 (2003) ("Appropriations Law"). In *Maine Community Health*, the Supreme Court explained that "Congress can create an obligation directly through statutory language" and "impose[] a legal duty of the United States that could mature into legal liability . . . ." 140 S. Ct. at 1320. Here, that obligation arose "by operation of law" as mandated by statute, GAO Redbook 7-41, and that occurred in the order Plaintiffs' applications were received (as indicated by the date/time applications were uploaded to SBA's platform). *See* Compl. ¶ 129; Pls.' Opp'n at 11-12; 22-27; Tr. (ECF 15) (Oral arg. May 22, 2024), at 63 (noting SBA's argument on meaning of "received" was one of its "weaker" arguments).

"[T]he determination of whether an obligation exceeds the amount available in the appropriation is based on the unobligated balance in the appropriation account *on the day the obligation is created*." Appropriations Law 43 (emphasis added). SBA's obligation to pay Plaintiffs arose on or before May 3, 2021, when their applications were received, which was before the RRF was exhausted either by valid obligations or erroneous disbursements. Compl. ¶¶ 140-41. For this reason, Plaintiffs' claims are within the scope of the substantive obligation created by § 9009c and fundamentally different from the claims in *Greenlee County*.

5

The program in *Greenlee County* provided pro-rated *reduced* awards to *all* participants because the funds appropriated were insufficient. The plaintiff there received its properly prorated award, but sought a *full* award (with no allegation of erroneous expenditures). The Federal Circuit held that liability was capped because the money-mandating obligation was expressly "subject to available appropriations." The failure to pay a full grant to plaintiff did not violate the agency's legal duty because that duty was limited by the cap. *Greenlee Cnty. v. United States*, 487 F.3d 871, 880 (Fed. Cir. 2007); Pls.' Opp'n 16-17. The situation here is fundamentally different because there is no proration of grants, and the SBA wrongfully paid funds it was obligated to pay Plaintiffs to entities it was neither obligated nor authorized to pay.

Other capped fund cases are of no help to SBA. In *State of South Carolina v. United States*, 144 Fed. Cl. 277 (2019), after amending the money-mandating statute to make it "subject to available appropriations," *id*. at 280, Congress appropriated no money. *Id.* at 282, 284, 290. The result was there was never an obligation, and thus no statutory violation. *Id.* at 288-89. In *Star-Glo Assocs., LP v. United States*, 414 F.3d 1349, 1355 (Fed. Cir. 2005), the Court found the agency's interpretation of the statute was correct, with the same result. *Id.* at 1357-58.

These cases turned on the question whether the Government was statutorily obligated to pay disputed amounts, but in each case the disputed amounts exceeded the *obligation* as limited by the appropriation. Here, it is alleged (and not plausibly disputed) that the SBA violated the statutory mandate to award grants in the order applications were received and, in contrast to *Greenlee*, RRF mandated *full* (not prorated) awards to a *limited* group of applicants in the order received (not to everyone who applied). Plaintiffs' well-pled factual allegations establish they are within that group to whom the Government's obligation ran. Pls.' Opp'n 10-11. Unlike

6

*Greenlee County* and S*outh Carolina*, Plaintiffs' claims here are *not* predicated on expanding the government's obligation beyond the first $28.6 billion of eligible applications received by SBA.

    **B.    Erroneous payments do not foreclose Plaintiffs' claims.**

The agency has argued that as of November 2022 it exhausted all $28.6 billion when it awarded recovered RRF funds to other applicants.  Compl. ¶ 69; SBA Mot. (ECF 7), at 2-3.  To the extent all RRF money was disbursed, the ADA likely would prevent the *agency* from disbursing additional money, absent recovery of erroneous disbursements.  31 U.S.C. § 1341(a)(1)(A).  More fundamentally, the ADA is a *constraint* on agency disbursements and obligations, not a *defense* to statutory violations. To the extent the agency tied its own hands by wrongfully disbursing funds, Plaintiffs' remedy is a damages claim in this Court (which is not constrained by the ADA under these circumstances).  *Maine Cmty. Health*, 140 S. Ct. at 1322.

Exhaustion of the RRF through erroneous disbursements does not foreclose Plaintiffs' damages claims.  Had the agency followed the statute and properly recorded obligations in the order applications were received, funds for Plaintiffs' awards would have been reserved *within* the fixed appropriation (just like *Samish*).  The agency was required to record obligations as applications were received.  GAO Redbook 7-41 to 7-42.  Those obligated balances could be adjusted to reflect additional information during agency review.  *Id*; B-300480 at 6 (Apr. 9, 2003).  Neither SBA's failure to properly record obligations nor its erroneous disbursements determine the existence of an obligation:  "[F]ailing to record a valid obligation in no way diminishes its validity or affects the fiscal year to which it is properly chargeable. . . ." GAO Redbook at 7-8.  The Supreme Court long ago made clear that erroneous disbursements do not foreclose damages claims even if there is a statutory cap on the Government's liability:  "Unless

7

the parties can agree as to the facts, the case should be remanded to the Court of Claims to determine what, if any, amount was erroneously charged against the appropriations . . . ; and for the amount of such improper charges, if any, judgment should be entered for the petitioner." *Sutton v. United States*, 256 U.S. 575, 582 (1921) (Brandeis, J.).

That additional money may be expended through the Judgment Fund for damages caused by SBA's statutory violations does not expand the appropriation. Since receipt of their applications, the SBA *always* has been obligated to Plaintiffs and *never* was obligated (or authorized) to pay ineligible or later applicants. GAO Redbook 14-50 (explaining "[p]ayment to the wrong person obviously does not discharge the government's obligation. If, through administrative mistake of fact or law or clerical error, a payment is made to a person not entitled to it, the government is still obligated to make payment to the proper claimant . . . .").

The separate problem presented by erroneous disbursements—a violation of the Purpose Statute, 31 U.S.C. § 1301(a)—cannot be remedied by this case and must be addressed through attempted recovery, *see* GAO Redbook 14-50, and Congressional oversight. But SBA's erroneous distributions are not a basis for dismissing Plaintiffs' claims. *See* GAO Redbook 14-50 (explaining that "payment to the proper claimant should not be held up pending recovery of the erroneous payment, even though this may result in a duplicate payment"). The *Sutton* Court remanded to the Court of Claims for this precise reason—potential erroneous disbursements did not foreclose plaintiff's damages claims even though the agency disbursed all available funds. 256 U.S. at 582. Thus, even if payment of Plaintiffs' claims would cause *total expenditures* (at least temporarily) to exceed $28.6 billion, those expenditures would *not* be inconsistent with a cap on liability.

8

### C.  The FRA rescinds only *unobligated* funds.

The RRF is available for an "indefinite" period because it "remains available until expended"; it does not "expire" and remains available until it is "closed," at which point it becomes legally unavailable.  *See* 31 U.S.C. §1555; CRS, *Expiration and Cancellation of Unobligated Funds* 1-2 (Feb. 26, 2024).  Closure of the RRF will not occur until October 2025 after two consecutive fiscal years have elapsed since the last disbursement. 31 U.S.C. §1555.

The FRA, enacted June 3, 2023, permanently rescinded "unobligated balances" made available by § 9009c(b)(2)(A).  A judgment of liability in this case would have the effect of confirming unliquidated *obligations* to Plaintiffs based upon legal liabilities that matured on or before May 3, 2021, when their applications were received.  Any recoveries of erroneous distributions returned to the RRF after May 3, 2021, were already "obligated" to first-in-time applicants and outside the reach of the FRA.  *See* 31 U.S.C. §1551(a)(1) (defining "obligated balance"); *see also* 31 U.S.C. §1502(b) ("A provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance."). This is highlighted by CBO's scoring, which estimates no savings from rescissions where budget authority is fully obligated (as it was in RRF before FRA's enactment).  *CBO Explains How It Estimates Savings from Rescissions* (May 2023), at 4.  CBO scores entitlement programs the same way.  *Id*.

FRA has no effect on *obligated* balances and does not "de-obligate" previously obligated funds.  Rescission of *unobligated* funds is akin to expiration after which an account "shall . . . remain available for recording, adjusting, and liquidating obligations properly chargeable to that

9

account." 31 U.S.C. §1553(a); *see also* B-265901 (Oct. 14, 1997) (expired funds could be used to satisfy obligation retroactively adjudicated). Rescission is different from *closure*, which applies to both "obligated" and "unobligated" balances. 31 U.S.C. §1555. Additionally, FRA did not rescind a separate $840 million account available to RRF. *See* Pls.' Opp'n. at 20 n.16. At any rate, if SBA is correct that agency funds are legally unavailable, the Judgment Fund would be available (as in *Samish*). *Id*. at 16 n.13; 20 n.16.

### D. Section 9009c(c)(6) does not foreclose Plaintiffs' claims.

Section 9009c(c)(6) requires award recipients to return unused funds to the Treasury. Such funds would be legally unavailable to the agency once returned to the Treasury, but Section 9009c(c)(6) is narrow and does not purport to (a) address the agency's use of other previously obligated funds; or (b) negate the agency's obligation to seek return of *erroneous* disbursements (whether used or unused). GAO Redbook 9-137, 10-132; B-302366 (Jul. 12, 2004). It also does not constrain the agency's use of recovered erroneous disbursements to satisfy Plaintiffs' damages claims. GAO Redbook 6-170 to 6-171; Pls.' Opp'n at 20-22, 32-35. Efforts to recover erroneous disbursements are ongoing. Compl. ¶¶ 7, 69-70, 88, 90, 120-23; DOJ Press Release (May 17, 2024), available at https://shorturl.at/NJnLm. Any such recovered funds may be used for the same purpose and time limitations as the original appropriation so long as the account has not closed. *See* B-310725 (May 20, 2008); OLC Memorandum, Application of the Miscellaneous Receipts Act (Jan. 10, 2006), at 57. Accordingly, they are a potential source to satisfy a money judgment here as long as the RRF account remains open.

Section 9009c(c)(6) also has no bearing on the availability of the Judgment Fund.

10

Respectfully submitted,

/s/ F. Greg Bowman
F. Greg Bowman
Edward Reddington
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
202-434-5000
fbowman@wc.com
*Attorneys for Plaintiffs*

Robel Yared
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
202-434-5000
*Of Counsel*

June 5, 2024